733 So.2d 1012 (1999)
COLLIER COUNTY, Florida, etc., Appellant,
v.
STATE of Florida, et al., Appellees.
No. 93,802.
Supreme Court of Florida.
May 6, 1999.
*1013 C. Allen Watts of Cobb, Cole & Bell, Daytona Beach, Florida, for Appellant.
Joseph P. D'Alessandro, State Attorney, and Michael J. Provost, Assistant State Attorney, Twentieth Judicial Circuit, Naples, Florida, and Douglas L. Stowell of Stowell, Anton & Kraemer, Tallahassee, Florida, for Appellees.
Daniel D. Eckert, Volusia County Attorney, and Joseph A. Morrissey and Mark A. Watts, Assistant County Attorneys, Clearwater, Florida, for The Florida Association of County Attorneys, Inc., Amicus Curiae.
PARIENTE, J.
We have on appeal the final judgment of the trial court refusing to validate revenue certificates authorized by county ordinance. We have jurisdiction. See art. V, § 3(b)(2), Fla. Const.[1]
*1014 Collier County filed a complaint for validation of revenue certificates, which the County intended to issue pursuant to Ordinance 98-25, entitled "Interim Governmental Services Fee Ordinance" (ordinance). Because the revenue certificates were to be repaid from the collection of a fee authorized by the ordinance, the trial court's decision whether to validate the revenue certificates focused on the validity of the fee.
After a hearing, the trial court denied the complaint for validation, concluding that the fee was actually an unauthorized tax. We affirm the final judgment of the trial court for two reasons. First, we agree that the "Interim Governmental Services Fee" is not a valid special assessment or fee, but an impermissible tax. Second, we conclude that the ordinance conflicts with the ad valorem taxation scheme enacted by the Legislature.
An overview of the extent of the local government's authority to levy taxes is essential to a proper understanding of the issues in this case and to provide the backdrop for the reasons the County passed the ordinance. The power of state and local governments to levy taxes is governed by the constitution. Article VII, section 1(a), Florida Constitution, provides that:
No tax shall be levied except in pursuance of law. No state ad valorem taxes shall be levied upon real estate or tangible personal property. All other forms of taxation shall be preempted to the state except as provided by general law.
Article VII, section 9(a) further provides that:
Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes[[2]] and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by the constitution.
Thus, the constitution mandates that the state pass general laws authorizing local governments to levy ad valorem taxes on real estate and tangible personal property, subject to the millage rate limitations of article VII, section 9(b).[3] All other forms of taxation are preempted to the state, unless authorized by general law. The constitution further allows the Legislature to authorize counties to levy other taxes. Therefore, local governments have no other authority to levy taxes, other than ad valorem taxes, except as provided by general law. The County does, however, possess authority to impose special assessments and user fees. See generally art. VIII, § 1(f), Fla. Const.; § 125.01(1)(r), Fla. Stat. (1997); State v. City of Port Orange, 650 So.2d 1 (Fla. 1994); Speer v. Olson, 367 So.2d 207 (Fla. 1978).
The County does not contend that the additional revenue it seeks to collect pursuant to its ordinance is specifically authorized by general law. Accordingly, if the "Interim Governmental Services Fee" constitutes a tax, rather than a special assessment or a valid fee, the assessment is unconstitutional.
The County passed the ordinance in question because it contends that the general law governing ad valorem taxation *1015 creates a "windfall" for certain property owners. Chapter 192, Florida Statutes (1997), entitled "Taxation: General Provisions," implements, in part, the mandate of article VII, section 9(a) that the Legislature authorize counties to levy ad valorem taxes. Chapter 192 includes provisions requiring all property to be assessed, except inventories, see section 192.011, and, as pertinent here, provisions regarding the date that "[a]ll property shall be assessed according to its just value." § 192.042.
Section 192.042(1) provides that real property is to be assessed on January 1 of each year and that "[i]mprovements or portions not substantially completed[[4]] on January 1 shall have no value placed thereon." (Emphasis supplied.) Therefore, if improvements are not substantially completed by January 1, there will be no tax liability on the value of the improvements until the following fiscal year. Further, section 197.333 provides that all taxes are due and payable on November 1, but those taxes do not become delinquent until April 1 following the year in which they are assessed. As a result of the valuation scheme enacted by the Legislature, there can be a delay in payment of taxes on improvements of up to twenty-seven months after substantial completion.[5]
In addition, the Legislature requires the County's fiscal year to begin on October 1. See § 129.04, Fla. Stat. (1997). However, because of the valuation scheme imposed by the Legislature, property improvements substantially completed after October 1 incur no ad valorem taxes on the improved value for the balance of the fiscal year.[6]
The County does not challenge the constitutionality of the statutory valuation scheme, but asserts that the statutory scheme is unfair because the County is required to provide services to the improved property without a corresponding payment of taxes on the improvements for up to twenty-seven months. The County described the situation in its ordinance:
Immediately upon the substantial completion and availability for lawful occupancy of any improvements to real property ... the County is required to provide full government services to the occupant or user of such property, for the duration of the fiscal year in progress at the time of such completion or acquisition, but the owner of such property is not required to pay ad valorem taxes with respect to such property for that fiscal year.
The purpose of the fee is to provide the equivalent of a partial year assessment of ad valorem taxes on improvements to property substantially completed after January 1 that would not otherwise be subject to ad valorem taxation at its new increased value. However, the County stresses that the assessment is not based on the value of the property, but rather on the increased cost of providing certain "growth-sensitive" services as a result of the improvement.
The County's methodology identified certain government services that the experts maintained are growth sensitive. According to the expert who testified at the hearing, these growth-sensitive County services experience an increase in demand corresponding to the improvement of property. Through a complicated set of calculations, *1016 the County arrived at a fee for the improvements to properties substantially completed after January 1 "equivalent to the [pro rata] cost of governmental services otherwise funded by that portion of the County General Fund ... derived from ad valorem taxation." The County's methodology calls for the calculation of the fee to be based on the conversion of a per capita cost for increased services to a per home cost in the case of residential property, and a per employee cost to a per square foot cost in the case of nonresidential uses.
The fee is assessed only for the number of weeks between the time the improvements on the property are "substantially completed," and the next January 1 assessment. The ordinance provides that the fee will be collected by the uniform method for collection of non-ad valorem assessments established by section 197.3632, thus, as a special assessment on the ad valorem tax bill. A credit is given for the taxes that are payable and the value of the homestead exemption.
The government growth-sensitive services funded by the fee are: (1) the Office of the Sheriff; (2) elections; (3) code enforcement; (4) courts and related agencies; (5) animal control; (6) libraries; (7) parks and recreation; (8) public health; (9) medical examiner; (10) public works; and (11) support services.[7] The County admits that these are the exact services funded through the general revenue fund from ad valorem taxes that all property tax payers are required to support.
The trial court explained its reasoning in concluding that the proposed fee to fund the revenue certificates was in fact a tax, which the County is prohibited from imposing:
The purpose of the [Interim Governmental Services Fee] was to provide the equivalent of a partial year's assessment of ad valorem taxation on property which had been improved or put into service after January 1 of a given year. That improved property would not have been otherwise eligible for ad valorem taxation at its new value until the subsequent calendar year. As pointed out by the County, this situation created a windfall to certain citizens which was unfair to those taxpayers who did not receive the same advantage. It is axiomatic that the Government must provide all citizens of the County such general public services as police, courts, libraries, and fire protection. These basic services are provided whether the property is fully inhabited, vacant or under construction. Ad valorem taxpayers who are assessed at full value pay their proportionate share of these services based upon the millage rate established by the County. Those who are not assessed at full value obviously pay less than their proportionate share.... It was the County's desire to recapture this lost revenue which created the impetus for the Fee.

. . . .
... [However] the Fee in this case is to be used to pay for law enforcement, courts, libraries, Supervisor of Election services, code enforcement, public health and many other general support services. These are the types of benefits the supreme court has clearly stated do not meet the standard for special assessments.
We agree with the trial court's analysis.

THE "INTERIM GOVERNMENTAL SERVICES FEE" IS A NOT A VALID SPECIAL ASSESSMENT
Although the County argues that the "Interim Governmental Services Fee" is a valid special assessment, we find that the "fee" has all the indicia of a tax. In *1017 City of Boca Raton v. State, 595 So.2d 25 (Fla.1992), we explained the distinction between special assessments and taxes:
[A] legally imposed special assessment is not a tax. Taxes and special assessments are distinguishable in that, while both are mandatory, there is no requirement that taxes provide any specific benefit to the property; instead, they may be levied throughout the particular taxing unit for the general benefit of residents and property. On the other hand, special assessments must confer a specific benefit upon the land burdened by the assessment....

A tax is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A special assessment is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax but it is inherently different and governed by entirely different principles. It is imposed upon the theory that that portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefitted, is not governed by uniformity and may be determined legislatively or judicially.
Id. at 29 (quoting Klemm v. Davenport, 100 Fla. 627, 631-32, 129 So. 904, 907-08 (1930)) (emphasis supplied). In City of Boca Raton, this Court found that an assessment to be levied against downtown property owners to revitalize the downtown area was a valid assessment under these criteria. 595 So.2d at 31; see also, e.g., Atlantic Coast Line R.R. v. City of Gainesville, 83 Fla. 275, 283-84, 91 So. 118, 121 (1922) (the theory of a special assessment is that "the value of certain property is enhanced by an improvement of a public character, the property thus receiving an especial and peculiar benefit; and that upon such property a part or the whole of the cost of such public improvement is assessed to an amount not exceeding the amount of such benefits").
In Lake County v. Water Oak Management Corp., 695 So.2d 667 (Fla. 1997), we recited the two-pronged test an assessment must satisfy in order to be considered a valid special assessment, rather than a tax. The two prongs are: (1) the property burdened by the assessment must derive a "special benefit" from the service provided by the assessment; and (2) the assessment for the services must be properly apportioned. Id. at 668 (citing City of Boca Raton, 595 So.2d at 30).
The assessment in this case fails because it does not satisfy the first prong of the test. Contrary to the County's contention, the first prong of the test is not satisfied by establishing that the assessment is rationally related to an increased demand for county services. If that were the test, the distinction between taxes and special assessments would be forever obliterated.
We explained in Water Oak Management that the first prong requires that the services funded by the special assessment provide a "direct, special benefit" to the real property burdened. 695 So.2d at 670. A majority of this Court concluded that the fire services funded by the assessment in Water Oak Management met this requirement by providing for lower insurance premiums and enhancing the value of property. Id. at 669. In rejecting the criticism that our decision in Water Oak Management would open the flood-gates for municipalities and counties to impose improper taxes labeled as special assessments, we made clear that

services such as general law enforcement activities, the provision of courts, and indigent health care are, like fire protection services, functions required for an organized society. However, unlike *1018 fire protection services, those services provide no direct, special benefit to real property. Thus, such services cannot be the subject of a special assessment.

Id. at 670 (citation omitted) (emphasis supplied).
The County concedes that the services funded by the assessment in this case are the same general police-power services the County provides to all county residents for their general benefit, funded from ad valorem taxes, including: sheriff services; libraries; parks; election services; public health services; and public works. Thus, the fee in this case has the indicia of a tax because it is proposed to support many of the general sovereign functions contemplated within the definition of a tax. See City of Port Orange, 650 So.2d at 3.
As explained in Klemm, a tax is a burden imposed "by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform." 100 Fla. at 631, 129 So. at 907 (emphasis supplied). While the services to be funded by the assessment may be population-sensitive, the provision of these services provides no direct special benefit to the improved property, as explained in Water Oak Management. We further reject the County's argument that the time period after January 1, during which the taxpayer incurs no increased ad valorem tax liability on the improved property, constitutes a "special benefit," satisfying the first prong of the special assessment analysis. A special benefit to the property, as set forth in this Court's case law, does not occur because the property is not subject to taxation for a period of time as a result of an explicit legislative scheme. We reject the County's suggestion that simply because a lien for unpaid taxes attaches to the property, the benefit inures to the property, as opposed to the taxpayer. While the delay certainly may benefit the taxpayer, it is only thata benefit to the taxpayer, and not the property.

THE "INTERIM GOVERNMENTAL SERVICES FEE" IS NOT A VALID USER OR IMPACT FEE
The County's ordinance includes a "savings clause" providing for the collection of the same amount of money as a fee upon the issuance of the certificate of occupancy, if the uniform method of collection is declared invalid. However, a change in the method of collection will not convert a prohibited tax into a valid fee. As we stated in City of Port Orange, the power "to tax should not be broadened by semantics which would be the effect of labeling what the City is here [attempting to collect] a fee rather than a tax." 650 So.2d at 3.
In City of Port Orange, this Court found an alleged "transportation utility fee" to actually be an impermissible tax. In that case, the City sought to levy a fee on property owners to support the operation, maintenance and improvement of the local road system. See id. at 2. We explained that user fees are "charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society." Id. at 3 (emphasis supplied). In that aspect, user fees are similar to special assessments, in that the fee must result in a benefit not shared by persons not required to pay the fee.
Similarly, the fee cannot be authorized as a valid impact fee. See St. Johns County v. Northeast Florida Builders Ass'n, 583 So.2d 635 (Fla.1991). In St. Johns, the County enacted an ordinance requiring that no new building permits could be issued except upon payment of an impact fee. See id. at 636. The collected fees were to be placed in a trust fund to be spent to "acquire, construct, expand and equip" educational sites and facilities "necessitated by new development." Id. at 637.
We observed that impact fees had become an accepted method of paying for "public improvements" to serve new *1019 growth. Id. at 638 (emphasis supplied). We found the fee to be invalid because it was imposed only on those outside a municipality, with limited exceptions. See id. at 639. Those residing in a municipality were not required to pay the fee. However, there was nothing in the ordinance restricting the use of the funds to build schools that would only benefit those outside municipalities, who were the ones paying the fee. See St. Johns County, 583 So.2d at 639. Thus, like the invalid fee in City of Port Orange, the fee in St. Johns County was invalid because it did not provide a unique benefit to those paying the fee. See also Contractors & Builders Ass'n v. City of Dunedin, 329 So.2d 314, 320 (Fla.1976) ("Users who benefit especially... by the extension of [sewer] system... should bear the cost of that extension.") (ellipses in original).
As explained above, the services to be funded by the "Interim Government Services Fee" provide no direct benefit to the property. Those paying the fee are not benefitted by the services provided in a manner not shared by those not paying the fee. Instead, the services to be funded by the fee are the same general police-power services provided to all County residents. Moreover, the fee would not provide the source for any capital improvements to the County's existing facilities, but instead would defray the operating costs for the County to exercise its sovereign functions. Just as the fee fails to meet the requirements of a special assessment, so does it fail to qualify as a valid fee.

THE ORDINANCE CONFLICTS WITH THE LEGISLATURE'S AD VALOREM TAXATION SCHEME
The County has been candid in admitting that the purpose of the ordinance is to recoup the losses in ad valorem taxation caused by the legislative scheme for valuing property for ad valorem tax purposes. In fact, the County specifically intends the ordinance to substitute for the legislatively prohibited partial year assessment. However, as explained previously, the County has no inherent power to tax, but obtains that authority only from the constitution and general law. See Whitney v. Hillsborough County, 99 Fla. 628, 643, 127 So. 486, 492 (1930). Thus, special acts or local ordinances that impose taxes that are unauthorized by general law are unconstitutional. See Alachua County v. Adams, 702 So.2d 1253, 1255 (Fla.1997).
The constitution requires the Legislature to enact the general law regarding the collection of ad valorem taxes, and the Legislature has established a specific statutory scheme for the timing of the valuation and assessment. Section 192.042(1) makes clear that partial year assessments are not authorized for improvements to real property substantially completed after January 1, which "shall have no value placed thereon." There is no ambiguity in the statute. It appears that any benefit to taxpayers was specifically contemplated by the legislative scheme. Therefore, the ordinance, which attempts to rectify what the County terms a "glitch" in the present general statutory law, conflicts with the method and timing for valuation of property for ad valorem purposes established by the Legislature by general statutory law.
If there is a windfall created by the current statutory scheme, as the County claims, the County's redress lies with the Legislature. While we do not know why the Legislature has declined to act, as observed by the trial court in this case: "We clearly have able and competent legislators who are obligated to do the right thing."
To achieve the relief sought, the counties must persuade the Legislature to provide the cure, not the courts. Accordingly, the trial court's decision is hereby affirmed.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, LEWIS and QUINCE, JJ., concur.
NOTES
[1] This Court has mandatory jurisdiction to hear appeals from final judgments entered in proceedings for validation of "certificates of indebtedness," when provided by general law. Art. V, § 3(b)(2). Section 75.08, Florida Statutes (1997), provides that either party may appeal the trial court's decision on the complaint for validation of certificates of indebtedness. A revenue certificate is an obligation of indebtedness. See § 125.01(1)(r), Fla. Stat. (1997).
[2] An "ad valorem tax" is a tax based upon the assessed value of property. See § 192.001(1), Fla. Stat. (1997). The term "ad valorem tax" may be used interchangeably with the term "property tax." See id.
[3] Subject to certain limitations, article VII, section 9(b), of the Florida Constitution caps the millage rates that counties can impose upon real estate and tangible personal property at ten mills. A "mill" is one-tenth of one cent, Black's Law Dictionary 993 (6th ed.1990), i.e., "one one-thousandth" of a dollar. § 192.001(10).
[4] "`Substantially completed' shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed." § 192.042(1).
[5] By way of example: If an improvement on property is completed on or after January 2, 1999, the increased value of the property due to the improvement will not be assessed until January 1, 2000, with the taxes due on November 1, 2000, but payable, without delinquency, until April 1, 2001.
[6] By way of example: If an improvement on property is completed after the start of the county's fiscal year, October 1, 1999, no ad valorem taxation will be assessed for the entire 1999 fiscal year. The January 1, 2000 valuation will be for an assessment for the fiscal year beginning October 1, 2000.
[7] The County's expert determined that numerous government costs were fixed and not impacted by improvements to property, including the Office of the Property Appraiser, Tax Collector, Public Services (Administration), Veterans' Services, Stormwater Management, Property Management and Forestry.