760 So.2d 998 (2000)
SMM PROPERTIES, INC., M.H. Group II, Sunbank, as Trustee d/b/a The Presidential Plaza and The Presidential Plaza West, Kendi Inc., Eagle Insurance Company and MRG Realty Corp., Appellants,
v.
CITY OF NORTH LAUDERDALE, Appellee.
No. 4D98-3525.
District Court of Appeal of Florida, Fourth District.
June 14, 2000.
*999 Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and Neisen O. Kasdin of Keith Mack, LLP, Miami, for appellants.
Gregory T. Stewart, Robert L. Nabors and Virginia Saunders Delegal of Nabors, Giblin & Nickerson, P.A., Tallahassee, and Samuel S. Goren and Michael D. Cirullo, Jr., of Josias, Goren, Cherof, Doody & Ezrol, P.A., Fort Lauderdale, for appellee.
EN BANC.
STEVENSON, J.
Appellants, a group of commercial property owners in Broward County, challenge a final judgment entered on behalf of the City of North Lauderdale in which the trial court found that a special assessment levied to fund an integrated fire rescue program provided a special benefit to the subject properties and that the methodology utilized to determine the amount of the assessment was fair and reasonable. The integrated fire rescue program included: 1) fire suppression, 2) first-response medical aid, and 3) emergency medical services (EMS). Because we conclude that, as a matter of law, the emergency medical services component of the integrated fire rescue program at issue in this case did not provide a special benefit to the assessed properties, we reverse that aspect of the final judgment, but certify the issue as one of great public importance. We affirm the trial court's determination that the assessment *1000 method was fair and reasonable insofar as the fire rescue portion of the assessment is concerned.

Facts
Historically, the City of North Lauderdale, a municipal corporation located in Broward County, provided fire services within its boundaries, and the County provided emergency medical services[1] within the City. EMS was funded by ad valorem taxes collected by the County. Eventually, the County decided to charge the City for providing EMS to its residents. Pursuant to the County's decision, the City and the County entered into a contract wherein the County agreed to provide EMS services to the City by furnishing the City with two emergency vehicles to be stationed at the City's fire station and at one other location. Pursuant to the agreement with the City, county-employed paramedics/firefighters onboard the emergency vehicles respond to all major medical calls. These vehicles, which are equipped to provide Advanced Life Support,[2] are used to transport injured persons to the appropriate hospital in medical emergencies. The annual net cost of the County's two-year EMS contract with the City is $318,000.00, with a provision for a 5% increase in the second year.
In June of 1996, the City adopted an ordinance which authorized and established procedures to fund the cost of an integrated fire rescue and EMS program through a special assessment levied on all property owners in the City. The City of North Lauderdale determined that the fire rescue services, facilities, and programs included in the integrated fire rescue program provided a special benefit to the levied property by protecting the value of improvements and structures, protecting the life and safety of occupants, and lowering the cost of fire insurance and containing the spread of fire incidents. See Ordinance No. 96-6-901, § 1.04. The City also adopted a resolution which established the rate of the assessment. See Resolution No. 96-7-3612.
Appellants filed a complaint requesting declaratory relief and an injunction against the City, alleging that the assessment was an unconstitutional tax disguised as a special assessment. Appellants conceded that the fire services portion of the assessment conferred a special benefit upon their properties. They sought, however, a declaration that the portion of the assessment for emergency medical services was improper because the properties did not derive a special benefit from the service provided and a declaration that the assessment was not fairly or reasonably apportioned according to the benefits received.
The trial court granted partial summary judgment on behalf of the City, finding that the special assessment for the integrated fire rescue program conferred a special benefit to property as a matter of law. The parties were in agreement that a trial was required to resolve the apportionment issue. Subsequently, at a non-jury trial, the court found that the methodology adopted by the City to apportion the special assessment among the properties was based upon actual historical usage of fire rescue services by various categories of property within the City and the assessment was apportioned fairly and reasonably. This appeal ensued.

Ad valorem taxes/special assessments
Appellants argue that the trial court erred in granting partial summary judgment *1001 for the City because the assessment for emergency medical services provides a service to all citizens in the city and does not provide a special benefit to the assessed real property. Thus, appellants assert that the assessment for emergency medical services is an invalid ad valorem tax clothed as a special assessment. We agree.
In Collier County v. State, 733 So.2d 1012, 1017 (Fla.1999), the Florida Supreme Court discussed the distinction between special assessments and taxes:
"[A] legally imposed special assessment is not a tax. Taxes and special assessments are distinguishable in that, while both are mandatory, there is no requirement that taxes provide any specific benefit to the property; instead, they may be levied throughout the particular taxing unit for the general benefit of residents and property. On the other hand, special assessments must confer a specific benefit upon the land burdened by the assessment. ...
`A tax is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A special assessment is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax but it is inherently different and governed by entirely different principles. It is imposed upon the theory that that portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefitted, is not governed by uniformity and may be determined legislatively or judicially.'"
(quoting City of Boca Raton v. State, 595 So.2d 25, 29 (Fla.1992))(quoting Klemm v. Davenport, 100 Fla. 627, 631-32, 129 So. 904, 907-08 (1930))(emphasis in original).
A special assessment must satisfy a two-prong test in order to be considered a valid special assessment rather than a tax: (1) the services at issue must provide a special benefit to assessed property, and (2) the assessment must be properly apportioned. See Sarasota County v. Sarasota Church of Christ, Inc., 667 So.2d 180, 183 (Fla.1995). The standard of review of the legislative determination that a service provides a special benefit to the land and the determination that the assessment is fairly apportioned is the same, i.e., whether the determination is "palpably arbitrary." Id. at 184. The legislative determination is presumed correct, and the burden is on the party contesting the assessment to establish its invalidity. See City of Hallandale v. Meekins, 237 So.2d 318, 320-21 (Fla. 4th DCA 1970).

Special benefitEmergency Medical Services
Special assessments for fire protection services have typically been found to be valid since these services provide a direct, special benefit to real property by lowering insurance premiums and enhancing the property's value. See South Trail Fire Control Dist., Sarasota County v. State, 273 So.2d 380 (Fla.1973); Fire Dist. No. 1 of Polk County v. Jenkins, 221 So.2d 740 (Fla.1969); Sarasota County v. Sarasota Church of Christ, Inc., 641 So.2d 900, 902 (Fla. 2d DCA 1994), quashed on other grounds, 667 So.2d 180 (Fla.1995). Assessments for government-subsidized medical services such as county health units and hospitals have generally not been found to confer a special benefit to real property because everyone in the jurisdiction is potentially benefitted by the service and there is no special advantage inuring to the real property. See Collier County, 733 So.2d at 1018 (invalidating a special assessment to fund "public health" services, *1002 etc.); Whisnant v. Stringfellow, 50 So.2d 885, 886 (Fla.1951)(invalidating special assessment to fund a county health unit); Crowder v. Phillips, 146 Fla. 440, 1 So.2d 629, 631 (1941)(invalidating special assessment for the construction and operation of a hospital).
Recently, this court addressed whether an assessment by the City of Pembroke Pines for integrated fire rescue and emergency medical services provided a special benefit to the real property burdened thereby. See City of Pembroke Pines v. McConaghey, 728 So.2d 347 (Fla. 4th DCA 1999). In that case, the same personnel who provided fire fighting services were also either paramedics or emergency medical technicians. In addition to the medical stabilization of the injured at the scene, Pembroke Pines' firefighters provided emergency medical transportation. Emergency medical transportation requires specially certified personnel and the maintenance and use of specially designed and equipped emergency medical services vehicles.[3] The trial court concluded that the provision of emergency medical services provided no special benefit to the property, and entered final judgment invalidating the special assessment. See id. at 349.
Looking to Lake County v. Water Oak Management Corp., 695 So.2d 667 (Fla. 1997), this court reversed the trial court and approved the integrated fire rescue assessment, stating
In Lake County the supreme court, faced with almost identical facts, considered the variety of services consolidated into fire protection services and viewed fire protection services as a single entity. We find no legal authority for analyzing each particular item funded within the fire protection services budget separately to determine if each individual item survives the special benefit test. In this case, the trial court erred by dissecting the services funded by the special assessment and then invalidating the entire special assessment based on a finding that one particular element of the fire protection services failed to satisfy the special benefit test of Lake County.

Pembroke Pines, 728 So.2d at 351 (emphasis added). This court held that the trial court's "piecemeal" review of the special assessment was contrary to the precedent set in Lake County. Id.
In Lake County, the court analyzed the county's special assessment for fire protection and solid waste disposal services. See 695 So.2d 667. The fire protection services included fire suppression activities, first response medical aid, educational programs, and building inspections. See id. at 669. The Florida Supreme Court agreed with the Fifth District's summary conclusion that the solid waste disposal special assessment was valid. The supreme court, however, disagreed with the Fifth District's conclusion that the special assessment for fire protection services provided no special benefit to the levied properties.
In evaluating whether a special benefit is conferred to property by the services for which the assessment is imposed, the test is not whether the services confer a "unique" benefit or are different in type or degree from the benefit provided to the community as a whole; rather, the test is whether there is a "logical relationship" between the services provided and the benefit to real property.
Lake County, 695 So.2d at 669 (citing Whisnant and Crowder)(footnote omitted). The court noted that although fire protection services are generally available to the community as a whole, the greatest benefit of fire protection services is to property owners because fire insurance premiums *1003 are decreased, public safety is protected, and the value of business property is enhanced.[4]
We believe that this court in Pembroke Pines unjustifiably relied upon Lake County to conclude that courts may never analyze each particular component funded within a fire protection services budget to determine if each individual item survives the special benefits test. The supreme court in Lake County had no occasion to address whether a trial court could dissect the components of a special assessment for fire services and analyze them separately because each of the items included in Lake County's fire protection program fire suppression activities, first response medical aid, educational programs, and building inspectionswere related to established fire rescue functions. The fire protection services funded by the City of Pembroke Pines included emergency medical services which differ from first response medical aid. There is no indication from the Supreme Court's or the Fifth District's opinions that the first response medical aid program discussed in Lake County involved anything more than a firefighter's routine, initial medical assistance duties under section 401.435, Florida Statutes (1997).
Pursuant to Florida law, "first response medical aid" is considered one of the routine duties of a firefighter, and firefighters are required to take 40 hours of training of first response medical aid. See §§ 401.435(1), 633.35(2), Fla. Stat. (1997); Fla. Admin.Code R. 4A-37.055(21). First response medical aid is routinely provided by policemen, firefighters, lifeguards, etc., as necessary "on-scene patient care before emergency medical technicians or paramedics arrive." § 401.435(1), Fla. Stat. The duties of the medical response teams in Lake County seem to fit precisely within the parameters of routine "first response medical aid" because the teams there had the duty to "stabilize patients and provide them with initial medical care." 695 So.2d 667-69; see also Water Oak Management Corp. v. Lake County, 673 So.2d 135 (Fla. 5th DCA 1996). There was no mention of the provision of comprehensive emergency medical transportation services as part of the integrated fire protection service discussed in Lake County.
Contrary to the City's position, this court in Pembroke Pines did not determine that emergency medical services conferred a special benefit to property. In Pembroke Pines, this court did not reach the merits of whether EMS conferred a special benefit to real property because the court found that it was not appropriate to review the budget piecemeal and invalidate the assessment "based on a finding that one particular element of the fire protection services failed to satisfy the special benefit test." 728 So.2d at 351. Accordingly, we recede from any suggestion in Pembroke Pines that the supreme court's holding in Lake County indicates that a court can never separately analyze each of the services funded within an integrated fire services budget to insure that each component survives the required special benefits test.
We find the emergency medical services provided by the City in this case analogous to the county health unit discussed in Whisnant v. Stringfellow, 50 So.2d at 885, and the construction and operation of the hospital in Crowder v. Phillips, 1 So.2d at 629, in that these services provide no direct, special benefit to property owners and most appropriately come within the general police power services which the City provides to all city residents for their general benefit. As the supreme court noted in Lake County,
[S]ervices such as general law enforcement activities, the provision of courts, *1004 and indigent health care are, like fire protection services, functions required for an organized society. However, unlike fire protection services, those services provide no direct, special benefit to real property. Thus, such services cannot be the subject of a special assessment....
695 So.2d at 670 (citation omitted).
Additionally, there was no evidence in this record that the availability of emergency medical services decreased insurance premiums or enhanced the value of real property. On the whole, emergency medical transportation services benefit people, not property. Thus, we hold that the City's legislative determination that the assessment for emergency medical services conferred a special benefit on property was arbitrary, and we find that the assessment "has the indicia of a tax because it is proposed to support many of the general sovereign functions contemplated within the definition of a tax." Collier County, 733 So.2d at 1018.
Lastly, we reject the City's contention that section 170.201, Florida Statutes (1997), requires that the assessment in this case be validated. Chapter 170 is entitled "Supplemental and Alternative Method of Making Local Municipal Improvements" and is designed to offer guidance to municipalities in the exercise of their authority to levy and collect assessments "against property benefitted." Section 170.201(1) provides in part that "[i]n addition to other lawful authority to levy and collect special assessments, the governing body of a municipality may levy and collect special assessments to fund capital improvements and municipal services, including, but not limited to, fire protection, emergency medical services, garbage disposal, sewer improvement, street improvement, and parking facilities." We read the provisions of chapter 170 as a whole as applying only to services which benefit the burdened property. Section 170.201 may not be properly applied to salvage the assessment for emergency medical services in this case because without a showing of special benefit to property, the assessment amounts to an improper tax. See Collier County, 733 So.2d at 1017; Article VII, §§ 1(a), 9(a), Fla. Const.
Because we conclude that the EMS services did not provide a special benefit to the property, any apportionment methodology utilized by the City to calculate an assessment for such services would be improper. As to the assessment for the remaining services included in the integrated fire rescue program, we find that the methodology used was neither unreasonable nor arbitrary.
Accordingly, we remand for the entry of a final judgment consistent with this opinion. Additionally, we certify the following to the Florida Supreme Court as questions of great public importance:
Do emergency medical services (EMS) provide a special benefit to property?

Can a fire rescue program funded by a special assessment use its equipment and personnel to provide emergency medical services for accidents and illnesses under Lake County v. Water Oak Management Corp., 695 So.2d 667 (Fla. 1997)?

DELL, GUNTHER, POLEN, FARMER, SHAHOOD, GROSS, TAYLOR and HAZOURI, JJ., concur.
KLEIN, J., concurs specially with opinion.
WARNER, C.J., dissents with opinion.
STONE, J., dissents with opinion.
KLEIN, J., concurring specially.
I agree with the majority opinion and am writing only to respond to Judge Warner's dissent. That dissent is based on the fact that, in Lake County, the fire department did respond to "automobile and other accident scenes." Lake County v. Water Oak Management Corp., 695 So.2d 667, 669 (Fla.1997). Judge Warner apparently believes that the existence of those facts in Lake County makes this case indistinguishable from Lake County.
*1005 After reading the opinion of the Fifth District Court of Appeal in Lake County[5] and the majority and dissenting opinions of the Florida Supreme Court in Lake County, I believe that those courts were primarily concerned with a broader issue than the one we have to resolve in this case. That issue was whether fire protection services, in general, provide a special benefit to property.
In Lake County, the county had previously been paying for fire control from general revenue before changing to paying for it by special assessment. Although the fifth district questioned in footnote eight whether first response medical care benefitted property, that fact did not appear to drive its decision. Similarly, the supreme court's opinion in Lake County mentions that the fire department responds to accidents, as Judge Warner emphasizes, but that was not the focus in that opinion either. The issue I derive from the majority and the dissent in Lake County was whether fire protection services in general provide a special benefit to property, so as to allow fire protection services to be paid for by a special assessment.
Although I think Lake County is distinguishable, Judge Warner's point is well-taken, and only the supreme court can determine whether we have misinterpreted Lake County. The number of amicus briefs filed in Lake County, which reached the court on a question of great public importance, is indicative that the issue we are deciding could affect many governmental entities and should be decided by our supreme court.
In the present case, one of the facts relied on by the property owners, in arguing that they should not have to pay for all the services provided by the fire rescue program, was that in 1994, of the 1,901 responses made by the program, only thirty-seven percent were for fires. The remaining sixty-three percent were for emergency medical services. It is one thing to say, as the supreme court did in Lake County, that there is a logical relationship between fire protection services in general and the benefit to owners of real property. 695 So.2d at 669. When almost two-thirds of the responses, however, are not for fires, I do not see how the special assessment in this case does have the logical relationship required by Lake County.
WARNER, C.J., dissenting.
I, too, would affirm on the authority of Lake County v. Water Oak Management Corp., 695 So.2d 667 (Fla.1997). In Lake County the supreme court found a "logical relationship" between the services provided and the property assessed, where the "services provided" included:
a number of services under the umbrella of "fire protection services" such as fire suppression activities, first-response medical aid, educational programs and inspections. The medical response teams stabilize patients and provide them with initial medical care. The fire department responds to automobile and other accident scenes and is involved in civil defense. Fire services are provided to all individuals and property involved in such incidents.
Id. at 668-69 (emphasis added). If a special assessment for "fire protection services" which includes the cost of responding to automobile accidents is "logically related" to property, then I cannot see why the services included in the City of North Lauderdale's assessment cannot also be included.
I agree that the issue is one of great public importance because cities and counties all over the state have an interest in what can be included in a special assessment. In City of Pembroke Pines v. McConaghey, 728 So.2d 347, 351 (Fla. 4th DCA), rev. denied, 741 So.2d 1136 (Fla.1999), from which the majority recedes today, we said, "[w]e find no legal authority for analyzing each particular item funded within the fire protection services budget separately to determine if each individual item survives the special benefit test." For instance, can the fire *1006 department include basic life support but not advanced life support, or must it exclude all costs and expenses of both? If the fire department is involved in responding to auto accidents and is involved in civil defense, as in the Lake County case, must those costs be deleted from the special assessment, as well as the costs segregated here? If that means that only two fire vehicles are needed to respond to fires, but the department has purchased an additional vehicle because of the number of auto accidents it must respond to, can the third fire vehicle's cost be included in the special assessment?
I think the question to be certified is as follows:
MUST EACH ITEM INCLUDED IN A FIRE PROTECTION SERVICES BUDGET FUNDED BY SPECIAL ASSESSMENT BE ANALYZED SEPARATELY TO DETERMINE IF EACH PARTICULAR ITEM WITH THE BUDGET SURVIVES THE SPECIAL BENEFIT TEST?
STONE, J., dissenting.
I would affirm on the authority of Lake County, although I do agree with the majority that Pembroke Pines is too broadly worded.
NOTES
[1] Emergency medical service is a term of art used to define the systematic provision of services for assessment, treatment, and transportation of injured persons in medical emergencies. See § 401.211, Fla. Stat. (1997).
[2] Section 401.23(1), Florida Statutes (1997), defines "[a]dvanced life support" as "treatment of life-threatening medical emergencies through the use of techniques such as endotracheal intubation, the administration of drugs or intravenous fluids, telemetry, cardiac monitoring, and cardiac defibrillation by a qualified person, pursuant to rules of the [Department of Health]."
[3] According to Florida Statutes chapter 401, part III, the providers of emergency medical transportation services, including "emergency medical technicians," "paramedics," and emergency vehicle drivers, must be licensed and certified by the state pursuant to the "Raymond H. Alexander, M.D., Emergency Medical Transportation Services Act."
[4] The Lake County Fire Department also responds to automobile and other accident scenes, which, at first glance, would not seem to provide a special benefit to property. However, an automobile crash or other accident, such as an explosion or chemical spill, could easily cause collateral destruction and damage to nearby property.
[5] Water Oak Management v. Lake County, 673 So.2d 135 (Fla. 5th DCA 1996).