825 So.2d 343 (2002)
CITY OF NORTH LAUDERDALE, Petitioner,
v.
SMM PROPERTIES, INC., et al., Respondents.
No. SC00-1555.
Supreme Court of Florida.
August 22, 2002.
*344 Robert L. Nabors, Gregory T. Stewart, and Virginia Saunders Delegal of Nabors, Giblin & Nickerson, P.A., Tallahassee, FL; and Samuel S. Goren and Michael D. Cirullo, Jr. of Josias, Goren, Cherof, Doody & Ezrol, P.A., Fort Lauderdale, FL, for Petitioner.
Neisen O. Kasdin of Gunster, Yoakley & Stewart, P.A., Miami, FL; and Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, FL, for Respondents.
Jamie A. Cole and Susan L. Trevarthen of Weiss, Serota, Helfman, Pastoriza & Guedes, P.A., Fort Lauderdale, FL, for The Group City Emergency Medical Service Coalition of Broward County, Florida, Inc., Amicus Curiae.
Randall N. Thornton, Lake Panasoffkee, FL, for The Village Center Community Development District, Amicus Curiae.
Frank A. Shepherd, Miami, FL, for Pacific Legal Foundation, Amicus Curiae.
William Phil McConaghey, pro se, Pembroke Pines, FL, Amicus Curiae.
QUINCE, J.
We have for review a decision of the Fourth District Court of Appeal on the following questions, which the court certified to be of great public importance:
DO EMERGENCY MEDICAL SERVICES (EMS) PROVIDE A SPECIAL BENEFIT TO PROPERTY?
CAN A FIRE RESCUE PROGRAM FUNDED BY A SPECIAL ASSESSMENT USE ITS EQUIPMENT AND PERSONNEL TO PROVIDE EMERGENCY MEDICAL SERVICES FOR ACCIDENTS AND ILLNESSES UNDER LAKE COUNTY V. WATER OAK MANAGEMENT CORP., 695 So.2d 667 (Fla.1997)?
SMM Properties, Inc. v. City of North Lauderdale, 760 So.2d 998, 1004 (Fla. 4th DCA 2000) (en banc). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons stated herein, we answer the certified questions in the negative and approve the decision of the district court.

FACTUAL BACKGROUND
At issue in this case is the validity of a special assessment imposed by the City of North Lauderdale (the City) on owners of improved property within the City for the purpose of providing an integrated fire rescue program.[1] In June of 1996, the City adopted an ordinance which authorized and established procedures to fund the cost of an integrated fire rescue and emergency medical services program through a special assessment levied on all *345 property owners in the City. The integrated fire rescue program included (1) fire suppression, (2) first-response medical aid, and (3) emergency medical services (EMS). A group of commercial property owners in Broward County (the Opponents) opposed the special assessment and filed a complaint requesting declaratory relief and an injunction against the City. The Opponents conceded that the fire services portion of the assessment, items one and two, conferred a special benefit on their properties, but sought a declaration that the portion of the assessment for emergency medical services (item three) was improper because the properties did not derive a special benefit from this service. The trial court granted partial summary judgment on behalf of the City, finding that the special assessment conferred a special benefit to property as a matter of law. On appeal, the Opponents argued the trial court erred because the assessment for emergency medical services provided a service to all citizens in the city and did not provide a special benefit to the assessed real property. See SMM Properties, Inc. v. City of North Lauderdale, 760 So.2d 998 (Fla. 4th DCA 2000) (en banc). The Fourth District agreed, concluding that the emergency medical services did not provide a special benefit to the assessed property because such services benefit people, not property. See id. at 1004. The City seeks review of the Fourth District's decision.

DISCUSSION
In Lake County v. Water Oak Management Corp., 695 So.2d 667, 669 (Fla.1997), we reiterated the test for determining the validity of a special assessment:
In reviewing a special assessment, a two-prong test must be addressed: (1) whether the services at issue provide a special benefit to the assessed property; and (2) whether the assessment for the services is properly apportioned. Sarasota County [v. Sarasota Church of Christ], 667 So.2d at 183; City of Boca Raton v. State, 595 So.2d 25, 30 (Fla. 1992).[2]
To resolve the issue in this case we must examine the first prong of the test and determine whether emergency medical services provide a special benefit to property.
The City asserts that its special assessment confers a special benefit to real property because a logical relationship exists between the use and enjoyment of property and the emergency medical services provided by the fire rescue program. In making its argument, the City asserts that the facts of this case fit squarely within our decision in Lake County, which included a special assessment imposed for fire protection services.[3] The "fire protection services" at issue in Lake County were described by the district court as follows:
Lake County provides a number of services under the umbrella of "fire protection services" such as fire suppression activities, first-response medical aid, educational programs and inspections. The medical response teams stabilize patients and provide them with initial medical care. The fire department responds to automobile and other accident scenes and is involved in civil defense. Fire *346 services are provided to all individuals and property involved in such incidents.
Water Oak Management Corp. v. Lake County, 673 So.2d 135, 137 (Fla. 5th DCA 1996), quashed in part, 695 So.2d 667 (Fla. 1997). The issue before this Court on a certified question was whether Lake County's fire protection services, funded by a special assessment, provided a special benefit to the assessed properties. We answered the certified question in the affirmative, finding the fire protection services did provide a special benefit to the assessed properties, because at a minimum, fire protection services provide for lower insurance premiums and enhance the value of property. Lake County, 695 So.2d at 669.
In this case, the City argues that Lake County's fire rescue program is similar to its own program because both are consolidated programs funding more than fire protection and suppression activities. The Opponents respond that Lake County involved first-response medical aid, not emergency medical services, and thus is not directly on point. The Opponents also argue that since first-response medical aid is a function provided by firefighters as part of their normal duties, the property owners in Lake County were really only paying for fire protection, and the special assessment in Lake County did not assess property owners for services outside the firefighters' jobs, such as emergency medical services.
We agree that the facts of this case do not fit squarely within Lake County. Although both programs are "integrated" programs encompassing more than fire suppression activities, the fire rescue program funded by the special assessment in Lake County did not include the provision of emergency medical services. The fire rescue program at issue in Lake County involved only first-response medical aid. The Fourth District recognized and explained the service thusly:
Pursuant to Florida law, "first response medical aid" is considered one of the routine duties of a firefighter, and firefighters are required to take 40 hours of training of first response medical aid. See §§ 401.435(1), 633.35(2), Fla. Stat. (1997); Fla. Admin. Code R. 4A-37.055(21). First response medical aid is routinely provided by policemen, firefighters, lifeguards, etc., as necessary "on-scene patient care before emergency medical technicians or paramedics arrive." § 401.435(1), Fla. Stat. The duties of the medical response teams in Lake County seem to fit precisely within the parameters of routine "first response medical aid" because the teams there had the duty to "stabilize patients and provide them with initial medical care." 695 So.2d 667-69; see also Water Oak Management Corp. v. Lake County, 673 So.2d 135 (Fla. 5th DCA 1996). There was no mention of the provision of comprehensive emergency medical transportation services as part of the integrated fire protection service discussed in Lake County.

760 So.2d at 1003.
Emergency medical services, on the other hand, are defined in Florida as follows:
(3) "Emergency medical services" means the activities or services to prevent or treat a sudden critical illness or injury and to provide emergency medical care and prehospital emergency medical transportation to sick, injured, or otherwise incapacitated persons in this state.
§ 401.107(3), Fla. Stat. (2000). Further, the legislative intent as to medical transportation services is outlined as follows:
Legislative Intent.The Legislature recognizes that the systematic provision of emergency medical services saves *347 lives and reduces disability associated with illness and injury. In addition, that system of care must be equally capable of assessing, treating, and transporting children, adults, and frail elderly persons. Further, it is the intent of the Legislature to encourage the development and maintenance of emergency medical services because such services are essential to the health and well-being of all citizens of the state. The purpose of this part is to protect and enhance the public health, welfare, and safety through the establishment of an emergency medical services state plan, advisory counsel, minimum standards for emergency medical services personnel, vehicles, services and medical direction, and the establishment of a statewide inspection program created to monitor the quality of patient care delivered to each licensed service and appropriately certified personnel.
§ 401.211, Fla. Stat. (2000) (emphasis added).
Based on these factors, the medical services provided for in this case are clearly distinguishable from the ones present in Lake County. The special assessment here cannot be upheld, as the City contends, simply because it provides the same services as the assessment upheld in Lake County. To the contrary, the special assessment here provides emergency medical services, while the assessment in Lake County did not. The City would have this Court extend the rationale of Lake County to apply to the instant case, arguing that a special assessment that provides a higher level of medical services is a natural and logical application of Lake County.
Having concluded that the facts of the instant case differ from Lake County, we must determine whether the special assessment at issue here nonetheless meets the first prong of the special assessment test; in other words, whether the special assessment for emergency medical services provides a special benefit to the assessed property. We traditionally defer to the legislative body's determination of special benefits. See City of Boca Raton v. State, 595 So.2d 25, 30 (Fla.1992); South Trail Fire Control Dist. v. State, 273 So.2d 380, 383 (Fla.1973) (determination of special benefits is one of fact for legislative body and apportionment of the assessments is a legislative function). "[T]he standard is the same for both prongs; that is, the legislative determination as to the existence of special benefits and as to the apportionment of costs of those benefits should be upheld unless the determination is arbitrary." Sarasota County v. Sarasota Church of Christ, 667 So.2d 180, 184 (Fla.1995).
In this case, the Fourth District found "that the City's legislative determination that the assessment for emergency medical services conferred a special benefit on property was arbitrary." SMM Properties, 760 So.2d at 1004. The City now argues that the Fourth District erred because it did not make express factual findings of why the legislative declarations of special benefit were arbitrary. Additionally, the City argues that it made clear, detailed, and specific legislative declarations as to the special benefit to property from the fire rescue program. The City points to the Fire Rescue Assessment Ordinance (the Ordinance):
Section 1.04. Legislative Determinations of Special Benefit.
It is hereby ascertained and declared that the fire rescue services, facilities, and programs of the City provide a special benefit to property within the City that is improved by the existence or construction of a Dwelling Unit or Building based upon the following legislative determinations:

*348 (A) Fire rescue services possess a logical relationship to the use and enjoyment of improved property by: (1) protecting the value of the improvements and structures through the provision of available fire rescue services; (2) protecting the life and safety of intended occupants in the use and enjoyment of improvements and structures within improved parcels; (3) lowering the cost of fire insurance by the presence of a professional and comprehensive fire rescue program within the City; and (4) containing the spread of fire incidents occurring on vacant property with the potential to spread and endanger the structures and occupants of improved property.
(B) The combined fire control and emergency medical services of the City under its existing consolidated fire rescue program enhances and strengthens the relationship of such services to the use and enjoyment of Buildings within improved parcels of property within the City.
(C) The combined fire control and emergency medical services of the City under its existing consolidated fire rescue program enhance the value of business and commercial property that is improved by the existence or construction of a Building which enhanced value can be anticipated to be reflected in the rental charge or value of such business or commercial property.
The trial court agreed with these findings, and in its order granting partial summary judgment to the City found that the consolidated fire rescue service as described in the ordinance provided a special benefit to property. However, the Fourth District disagreed, finding the emergency medical services component of the fire rescue service was not a special benefit to property because
there was no evidence in this record that the availability of emergency medical services decreased insurance premiums or enhanced the value of real property. On the whole, emergency medical transportation services benefit people, not property. Thus, we hold that the City's legislative determination that the assessment for emergency medical services conferred a special benefit on property was arbitrary, and we find that the assessment "has the indicia of a tax because it is proposed to support many of the general sovereign functions contemplated within the definition of a tax." Collier County, 733 So.2d at 1018.
760 So.2d at 1004.
An examination of the record supports the Fourth District's holding. Although the City did make general findings in the Ordinance that there was a special benefit to the assessed property, there is nothing more in the record to support these findings. We find, therefore, that competent, substantial evidence does not exist to support the City's findings of special benefit. There is no evidence of the type of benefits that inure to property from the provision of emergency medical services, no studies were conducted by the City documenting any specific special benefit, and there is no testimony or expert opinion indicating how the portion of the assessment providing for emergency medical services specially benefits real property. Moreover, a legislative body "cannot by its fiat make a local improvement of that which in its essence is not such an improvement, and it cannot by its fiat make a special benefit to sustain a special assessment where there is no special benefit." South Trail Fire Control Dist. v. State, 273 So.2d 380, 383 (Fla.1973) (quoting 48 Am.Jur., Special or Local Assessments, § 29, at 589 (1943)).
*349 Since a presumption of correctness does not attach to the City's findings of special benefit, we adhere to a standard of review of the lower court's decision based on ordinary findings of fact. The test for determining whether a special benefit is conferred to property was set out in Lake County:
In evaluating whether a special benefit is conferred to property by the services for which the assessment is imposed, the test is not whether the services confer a "unique" benefit or are different in type or degree from the benefit provided to the community as a whole; rather the test is whether there is a "logical relationship" between the services provided and the benefit to real property. Whisnant v. Stringfellow, 50 So.2d 885 (Fla.1951); Crowder v. Phillips, 146 Fla. 440, 1 So.2d 629 (1941) (on rehearing).
Lake County, 695 So.2d at 669 (footnote omitted). Relying on Fire District No. 1 v. Jenkins, 221 So.2d 740, 741 (Fla.1969), we concluded there was a logical relationship between the fire protection services and the assessed property in Lake County, because "fire protection services do, at a minimum, specially benefit real property by providing for lower insurance premiums and enhancing the value of the property." 695 So.2d at 669.
Before applying the test, however, we address the Opponents' argument that in Collier County v. State, 733 So.2d 1012, 1017 (Fla.1999), we appeared to retreat from the "logical relationship" test and return to a requirement that the services funded by a special assessment provide a direct, special, or unique benefit. This argument is without merit. Although Collier County did not mention the term "logical relationship," we did not retreat to the "unique benefit" test as the Opponents claim. In Collier County, we rejected the county's theory that the "interim governmental services fee" at issue was valid as a special assessment. We applied the two-prong special benefit test to the interim fee, and in our discussion of the special benefit prong stated:
We explained in Water Oak Management that the first prong requires that the services funded by the special assessment provide a "direct, special benefit" to the real property burdened. 695 So.2d at 670. A majority of this Court concluded that the fire services funded by the assessment in Water Oak Management met this requirement by providing for lower insurance premiums and enhancing the value of property. Id. at 669.
733 So.2d at 1017 (emphasis added). The emphasized language ("direct, special benefit") came directly from the discussion of the special benefit prong in Lake County. We also mentioned the "logical relationship" test in the recent case of City of Winter Springs v. State, 776 So.2d 255, 259 n. 4 (Fla.2001) ("Further, this Court has stated that, `[i]n evaluating whether a special benefit is conferred to property ... the test is whether there is a logical relationship between the services provided and the benefit to real property.'"). Thus, the "logical relationship" test for determining whether a special assessment confers a special benefit to property remains the standard by which we judge the validity of the special assessment at issue in this case.
The City argues there is a logical relationship between emergency medical services and a special benefit to property because these services protect the life and safety of intended occupants in the use and enjoyment of the assessed property. The Opponents argue that the portion of the assessment providing for emergency medical services must fail because there is no logical relationship between the assessment, *350 treatment, and transport of sick or injured people and a special benefit to real property. Opponents contend this portion of the special assessment is an invalid ad valorem tax clothed as a special assessment.
In City of Boca Raton v. State, 595 So.2d 25 (Fla.1992), we explained the distinction between special assessments and taxes:
[A] legally imposed special assessment is not a tax. Taxes and special assessments are distinguishable in that, while both are mandatory, there is no requirement that taxes provide any specific benefit to the property; instead, they may be levied throughout the particular taxing unit for the general benefit of residents and property. On the other hand, special assessments must confer a specific benefit upon the land burdened by the assessment. As explained in Klemm v. Davenport, 100 Fla. 627, 631-34, 129 So. 904, 907-08 (1930):
A tax is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A special assessment is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax but it is inherently different and governed by entirely different principles. It is imposed upon the theory that that portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefitted, is not governed by uniformity and may be determined legislatively or judicially.
Id. at 29 (emphasis supplied) (citation omitted); see also Collier County, 733 So.2d at 1016-17. Here, the emergency medical services portion of the special assessment has the indicia of a tax because it fails to provide a special benefit to real property. More specifically and according to the test set out in Lake County, there is no logical relationship between emergency medical services (the assessment, treatment, and transport of sick or injured people) and a special benefit to real property. Emergency medical services provide a personal benefit to individuals. There is no indication from the City or in the record how emergency medical services enhance the value of the property against which the assessment is imposed. The better argument made by the City is that the provision of emergency medical services has a logical relationship to property because these services enhance the use and enjoyment of property. See Meyer v. City of Oakland Park, 219 So.2d 417 (Fla. 1969). As to the "use and enjoyment" argument, however, it does not follow that one has potential added or actual use and enjoyment of property because emergency medical services are provided to owners of that property. Although emergency medical services may provide a sense of security to individuals, neither the service nor the sense of security is provided to the property itself.

CONCLUSION
Accordingly, we answer both certified questions in the negative, find that emergency medical services do not provide any special benefit to property, and approve the decision of the district court.
It is so ordered.
*351 ANSTEAD, C.J., and SHAW, HARDING, WELLS, and LEWIS, JJ., concur. PARIENTE, J., recused.
NOTES
[1] The City is a municipal corporation, organized and operating under the laws of the State of Florida, with home rule powers under article VIII, section 2(b), Florida Constitution and sections 166.021 and 166.041, Florida Statutes (2001).
[2] The second prong of the special assessment test, "whether the assessment for the services is properly apportioned," is not at issue in this case.
[3] Lake County also involved a special assessment for solid waste disposal services, but this Court agreed with the district court's summary conclusion that the solid waste disposal special assessment was valid.