353 So.2d 569 (1977)
SARASOTA COUNTY, Florida, Appellant/Cross-Appellee,
v.
TOWN OF LONGBOAT KEY, Florida, City of Sarasota, Florida, City of Venice, Florida, and City of North Port, Florida, Appellees/Cross-Appellants.
No. 76-1632.
District Court of Appeal of Florida, Second District.
November 30, 1977.
As Modified On Denial of Rehearing January 6, 1978.
*570 Talbot D'Alemberte of Steel, Hector & Davis, Miami, and Richard E. Nelson, Richard L. Smith, and Leslie Telford of Nelson, Hesse, Cyril & Weber, Sarasota, for appellant/cross-appellee.
William R. Korp and Andrew J. Britton of Korp, Wheeler & McGill, Venice, for appellee/cross-appellant, city of Venice.
John R. Wood of Wood, Whitesell & Karp, Sarasota, for appellee/cross-appellant, town of Longboat Key.
William C. Strode of Strode, Hereford & Taylor, Sarasota, for appellee/cross-appellant, city of Sarasota.
Allen J. Levin, Port Charlotte, for appellee/cross-appellant, city of North Port.
BOARDMAN, Chief Judge.
In June 1976 appellees, town of Longboat Key, city of Sarasota, city of Venice, and city of North Port, filed suit against appellant, Sarasota County, Florida, seeking relief from the levy of taxes allegedly used to finance services which were of no real or substantial benefit to the property or residents of the incorporated areas of the county.
Article VII, Section 9(a) of the Florida Constitution authorizes taxation of real and tangible personal property at specified rates by counties, school districts, municipalities, and special districts for their respective purposes. In addition, if authorized by general law, a county which provides services typically provided by a municipality ("municipal services") may levy additional taxes to finance those services within the tax-rate limit set for municipal purposes. Article VII, Section 9(b), Florida Constitution. It has long been held by the courts, however, that the taxing power may not be used to secure revenue from an area for services which do not benefit that area. E.g., State ex rel. Attorney General v. Avon Park, 108 Fla. 641, 149 So. 409 (1933). Included in the 1968 constitution was a specific proscription of taxation of property within a municipality to finance services rendered by the county exclusively for the benefit of unincorporated areas. Article VIII, Section 1(h), Florida Constitution. The supreme court construed Article VIII, Section 1(h) as prohibiting taxation of the incorporated areas for a purpose which would not provide a real and substantial benefit to municipal residents. City of St. Petersburg v. Briley, Wild & Associates, Inc., 239 So.2d 817 (Fla. 1970).
In 1974 the legislature enacted a comprehensive statute authorizing a county to provide "municipal services" and facilitating elimination of unconstitutional dual taxation of municipalities for those services which specially benefit the unincorporated areas. The state provides a scheme whereby the recipient of the services will finance those services. For example, by creation of "municipal service taxing or benefit units" within its unincorporated areas the county can assess the full costs of the "municipal service" provided to that unit. Section 125.01(1)(q), Florida Statutes (1975). Alternatively, the whole of the unincorporated *571 area may be assessed the cost of each "municipal service" provided by the county. Municipalities are not,however, precluded from voluntarily participating in a program where the county provides "municipal services" to it. A "special district" may be created to include an incorporated area but only upon passage of an ordinance which sets out the millage to be paid to the county for specific services provided to that district by the county. Section 125.01(5), Florida Statutes (1975).
If a municipality believed that the county is providing a service financed by county-wide revenues which is rendered particularly for the benefit of the unincorporated area, it may petition the county for redress. Upon determination that the service at issue is of special benefit to the unincorporated area or is of no real or substantial benefit to the municipality the county must elect among the following remedies: (1) financing the activity only by funds derived from the unincorporated areas, (2) creating a municipal service authority to provide the service with "funds derived from service charges, special assessments, or taxes within such unit only," and (3) remitting to the municipality the cost of the service identified as having been contributed by the municipality. Section 125.01(6)(a), Florida Statutes (1975). It would seem most reasonable to read this section as providing alternatives one and two for prospective relief and alternative three for retroactive relief.
Pursuant to Section 125.01, Florida Statutes, appellees each filed a separate resolution with the county challenging certain county-provided services and requesting that the county comply with Section 125.01(1)(q).[1] The county did not respond to the petitions within ninety days as provided by Section 125.01(6)(b), and this suit was brought by all four cities in circuit court on June 15, 1976. The county filed its answer alleging, among other things, that it "has provided and does make available to all the residents within the County various services which the Plaintiffs in this suit have failed and refused to utilize fully and otherwise make available to their residents."
Following extensive hearings and examination of the pleadings and exhibits, the trial court entered final judgment finding that
the equities of the cause are in favor of the Plaintiffs, Cities of Sarasota County, and against the Defendant, Sarasota County.
It is the further finding of the Court that an inequity exists between the taxes paid by the citizens of the incorporated areas of Sarasota County and the services which they have received.
To correct the imbalance between payment of services by the cities for which they received less services, there shall be created two major taxing districts within Sarasota County. These taxing districts shall be known as; Tax District A, consisting of the incorporated areas within Sarasota County, and Tax District B, which shall consist of the remainder, or the unincorporated areas of Sarasota County. The millage assessment for Tax District A is hereby set at 4.444 mills; and the millage assessment is hereby set for Tax District B at 6.140 mills for the tax year 1977.
Although the trial judge expended a great deal of time and effort in reaching his conclusion and fashioning an equitable solution, the remedy proposed by the trial court is not within the grant of authority provided by Section 125.01 as outlined in this opinion. We reverse and remand.
During final hearing several county and municipal officials testified to the type and scope of services provided by the county. Those witnesses referred repeatedly to a report prepared by an accounting firm at the request of the Sarasota County League of Cities, Inc. The report segregated the revenue collected by Sarasota County from the unincorporated areas and from each of the appellee municipalities and allocated a *572 value to the unincorporated areas and each of the municipalities for certain categories of services provided by the county for the tax years 1972-73, 1973-74, 1974-75. The report demonstrated that revenues generated from the municipalities were not matched by value in services provided to the municipalities. Although there was testimony relevant to the manner and amount by which specific services rendered by various departments benefitted each municipality, this evidence was not offered or considered to establish whether a particular service was a "municipal service" which provided a real or substantial benefit to municipalities. The purpose of this testimony was to determine whether the proportion of the total services rendered for the municipalities' benefit to total service rendered in the county equaled the proportion of the municipalities' total contribution to county-wide total contribution for the services.
If on remand the trial court finds that any challenged service was a "municipal service" financed by county-wide revenue of no real or substantial benefit to the municipalities, it will direct the county to establish an appropriate mechanism to pay for this service in the future. The county must also reimburse each of the municipalities for the cost of each service paid by its property owners from the time it identified that service by filing a resolution with the county until the corrective mechanism is established. In Judge Grimes' comprehensive opinion in Manatee County, Florida v. Town of Longboat Key, Florida, 352 So.2d 869 (Fla.2d DCA 1977), he outlined the procedure for determining the amount of the rebate due each municipality, and we refer the trial court to that case.
In view of our disposition of the case it is not necessary to reach the other issues raised on appeal.
REVERSED and REMANDED.
GRIMES, J., and McNULTY, JOSEPH P. (Ret.), Associate Judge, concur.
NOTES
[1] There were several services common to all resolutions but the lists were not identical, and each resolution was presented to the county on a different date.