FRANK, Judge.
This matter is again before us after a decade of extended litigation. Sarasota County appeals from an order enforcing a supplemental final judgment in which the trial court found that the county, contrary to Article VIII, Section 1(h), Florida Constitution and section 125.01(7), Florida Statutes (1985), was utilizing countywide acquired revenue to furnish services exclusively in unincorporated areas and not providing meaningful benefits to incorporated cities.* We affirm.
The history of this dispute is briefly recounted in order to provide the setting within which we resolve the current controversy. The appellees, incorporated cities within Sarasota County, initiated this action on June 15, 1976, claiming that the county was engaged in double taxation in the rendition of various services. The trial court ultimately determined that the services received in the incorporated areas were disproportionately below the taxes paid by the citizens in those areas. It entered a final judgment against the county on October 2, 1976, directing the establishment of two taxing districts commencing with the 1977 tax year and continuing until modified by agreement or decree. We reversed the trial court upon the ground that it had no authority to create taxing districts with judicially imposed millages and remanded for consideration of whether any challenged “municipal service” funded by countywide revenues was without real benefit to the cities. Sarasota County v. Town of Longboat Key, 353 So.2d 569 (Fla. 2d DCA *1020 1977). In the event the trial court reached such a finding, we required it to instruct the county to establish an appropriate mechanism to fund the services and rebate past revenues to the cities which were expended without attendant benefit. Id. The county appealed and the supreme court reversed our decision based upon Manatee County v. Town of Longboat Key, 365 So.2d 143 (Fla.1978). Sarasota County v. Town of Longboat Key, 375 So.2d 847 (Fla. 1979). In Manatee County, Article VIII, Section 1(h), Florida Constitution, was again found to be a limitation upon the county’s power to levy and collect property taxes and not a restriction upon the use of county revenues other than those stemming from property taxes. Manatee County also disapproved the entry of a money judgment against the county for past tax years for the reason that the trial court must follow section 125.01(6)(a), Florida Statutes (1985), in fashioning a dual taxation remedy. That section does not contemplate reimbursement as a cure for that kind of unconstitutional taxation.
In any event, the legislature amended section 125.01 to extend the proscription against the use of property taxes without accompanying benefits to include all county revenues without regard to source, with certain exceptions not applicable to the present matter. Section 125.01(6)(a), (7), Fla.Stat. (1979); see also Palm Beach County v. Town of Palm Beach, 426 So.2d 1063 (Fla. 4th DCA 1983). The trial court upon remand pursuant to the supreme court’s mandate conducted an evidentiary hearing which culminated in the entry of a supplemental final judgment. In that judgment, which underlies the contest now before us, it was found that the following services rendered by the county from countywide revenues were of no real or substantial benefit to the cities:
1. community and rural roads
2. library service (Town of Longboat Key)
3. aquatic weed control (Town of Longboat Key)
4. engineering and personnel services as related to the above services.
Thus, the trial court ordered the county to implement a budget to correct the dual taxation problem for the fiscal year 1980-81, and it retained jurisdiction to insure compliance with the order. The county appealed the supplemental final judgment to this court, which we affirmed in a per curiam opinion. Sarasota County v. Town of Longboat Key, 400 So.2d 1339 (Fla. 2d DCA 1981). Thereafter, the County sought to resolve the dual taxation problem by adopting Ordinance No. 82-99 on September 28, 1982, effective for the balance of the fiscal year 1981-1982 and succeeding years. That ordinance provided for the funding of community and rural roads in the unincorporated areas of the county. The money was to be generated by a franchise fee imposed upon Florida Power and Light. That fee was ultimately paid only by Florida Power and Light customers residing within the unincorporated areas. The cities responded by seeking the trial court’s enforcement of the 1980 supplemental final judgment.
After an evidentiary hearing, the trial court entered an order, inter alia, enforcing the supplemental final judgment. It is that order which is the target of this appeal.
The trial court found, in pertinent part, that the county's change in its budgetary scheme by the enactment of Ordinance No. 82-99 immediately prior to the close of the 1981-82 fiscal year, constituted a “ploy” to avoid compliance with the supplemental final judgment. We do not disturb that finding. The enforcement order further directed the county to remit to the cities the monies required to cure the effects of dual taxation which the trial court found in its supplemental final judgment to have existed in fiscal year 1980-81, a condition which prevailed until the 1984-85 fiscal year. The county was also ordered to develop a technique to comply with section 125.01(6) and (7), Florida Statutes (1985), in the construction and maintenance of community and rural roads, beginning with the fiscal year 1985-86 and to continue in subsequent years. We affirm.
*1021 The county raises three points in this appeal. First, it contends that the budgetary scheme adopted by the county from fiscal year 1981-82 onward, utilizing the franchise fee collected solely from customers in unincorporated areas has essentially corrected the claim of dual taxation. Although Ordinance No. 82-99 may have produced an effect beneficial to the cities, the supplemental final judgment specifically required that:
... the Defendant, Sarasota County, for the fiscal year 1980-81 shall adopt a budget eliminating the dual taxation between the taxpayers and property within the unincorporated areas of the County for the hereinabove itemized services for which the Court found no real and substantial benefit to the municipalities herein listed, according to Section 125.-01(6) and (7), Florida Statutes, as amended.
Section 125.01(6)(a), Florida Statutes, specifically provides three alternative methods by which the county can overcome double taxation in the ensuing fiscal year: (1) by taxes, special assessments or service charges levied or imposed solely upon residents or property in the unincorporated area; (2) by the establishment of a municipal service taxing or benefit unit; or (3) by remitting the identified cost of service paid from revenues required to be expended on a countywide basis to the municipality or municipalities.
The county contends that Ordinance No. 82-99 satisfies the first alternative because the fee is passed on to the property owners or residents only within the unincorporated areas and is not imposed countywide. Thus, says the county, the use of such fees, restricted to the unincorporated areas, does not violate the prohibition against taxation without benefit. The cities disagree claiming that because the franchise fee derives from Florida Power and Light’s revenue through the sale of electrical energy, and not from a direct levy upon the residents or property within the unincorporated areas, the statute is not fulfilled. We agree with the cities’ view. Florida Power and Light’s practice of passing the franchise fee on to those property owners and residents in the unincorporated areas does not accommodate to the statute’s evident meaning. See Southeastern Utilities Service Co. v. Redding, 131 So.2d 1 (Fla.1961). In short, the trial court correctly concluded that the county’s adoption of Ordinance No, 82-99 failed to equate with the directive contained in the supplemental final judgment, i.e., adopting and implementing the ordinance fell outside the statutory alternatives designed as the exclusive means to combat double taxation.
The county’s second attack upon the trial court’s order enforcing the supplemental final judgment originates with the assertion that the judgment affected only the fiscal year 1980-81 and that the relief accorded the cities in the enforcement order resulted in an expanded finding that the cities had not received any benefit in the fiscal years after 1980-81 and up to 1984-85. As an adjunct to the foregoing contention, the county claims that the enforcement order’s requirement that the cities be compensated for the fiscal years between 1980-81 and 1984-85 offends the principle expressed in Manatee County that a court “may not enter money judgments against counties for past years.” We disagree and respond to the county’s arguments in reverse order. The supreme court in Manatee County, although prohibiting a monetary award for “past tax years,” expressly authorized the trial court’s enforcement of “alternative methods of relief ... against a county for future tax years...” Id. at 147 (emphasis added). The enforcement order is in full accord with Manatee County and does not offend the bar to the repayment of past taxes. We subscribe to the fourth district’s conclusion in Palm Beach County v. Town of Palm Beach, 426 So.2d 1063 (Fla. 4th DCA 1983), rev’d. on other grounds, 460 So.2d 879 (Fla.1984), that: “[o]nce it has been judicially determined that a service or program is of no real and substantial benefit to the municipalities, it will be presumed that the same conditions prevail unless and until there is a judicial determination to the contrary.” Id. at 1067. Absent a showing by the county that “taxation without bene *1022 fit” did not exist after the entry of the supplemental final judgment, that judgment is accorded continuing vitality. Palm Beach Conti v. Town of Palm Beach, 507 So.2d 1154," 1158 (Fla. 4th DCA 1987) (“a party against whom a final determination has been made [must] make a showing of some factual change in circumstances as to the service or activity... in order to alter the continuing effect of a judgment duly litigated and finally determined”). The trial court properly directed the remittal of monies for fiscal years 1981-82 through 1984-85.
Finally, the county challenges the sufficiency of the cities’ evidence with regard to the characterization and precise mileage of community and rural roads in contrast with feeder roads. This specific issue, however, was raised and litigated by the county and the cities and was conclusively decided by the trial court in the supplemental final judgment. That judgment was reviewed on appeal and affirmed by this court in Sarasota County, 400 So. 2d at 1339. Therefore, under the principle of issue preclusion, the county is prevented from again raising the same point in this appeal. Orlando Concrete Contractors v. Hinds, 466 So.2d 1272, 1274 (Fla. 1st DCA 1985); State v. McCord, 385 So.2d 1112, 1114 (Fla. 4th DCA 1980).
Accordingly, based upon the foregoing, we find no error in the trial court’s order enforcing the supplemental final judgment.
Affirmed.
DANAHY, C.J. and CAMPBELL, J., concur.

 Article VIII, Section 1(h) of the Florida Constitution provides that:
(h) TAXES; LIMITATION. Property situate (sic) within municipalities shall not be subject to taxation for services rendered by the county exclusively for the benefit of the property or residents in unincorporated areas.
Section 125.01(7), Florida Statutes (1985), provides that:
No county revenues, except those derived specifically from or on behalf of a municipal service taxing unit, special district, unincorporated area, service area, or program area, shall be used to fund any service or project provided by the county where no real and substantial benefit accrues to the property or residents within a municipality or municipalities.