729 So.2d 998 (1999)
Cathy SOCKOL, Albert Ashley, and Phillip Hudson, Appellants,
v.
KIMMINS RECYCLING CORP., St. Lucie County, a political subdivision of the State of Florida; and City of Fort Pierce, a municipality organized under the Laws of the State of Florida, Appellees.
No. 98-2429.
District Court of Appeal of Florida, Fourth District.
March 31, 1999.
Rehearing Denied May 4, 1999.
*999 Michael Jeffries of Neill Griffin Jeffries Fowler Tierney & Neill, Fort Pierce, for appellants.
Jodi L. Corrigan, John H. Rains, III, and Frederick B. Karl of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, for appellee Kimmins Recycling Corp.
Gregory T. Stewart and Harry F. Chiles of Nabors, Giblin & Nickerson, P.A., Tallahassee, for appellee St. Lucie County.
James T. Walker of Brennan, Hayskar, Jefferson, Walker & Schwerer, P.A., Fort Pierce, for appellee City of Fort Pierce.
POLEN, J.
Cathy Sockol, Albert Ashley, and Phillip Hudson (landowners) challenge a final summary judgment which upheld the validity of St. Lucie County's Ordinance 93-16 and an interlocal agreement between the County and the City of Fort Pierce to provide for solid waste and recycling services through Kimmins Recycling Corp.[1] We affirm the final summary judgment.
The facts of this case are undisputed and repeated here as taken from the final judgment:
On May 11, 1993, St. Lucie County adopted Ordinance 93-16 (The "County Ordinance") relating to solid waste management within the County. The County Ordinance sought to reduce illegal dumping and littering in the County by requiring improved property owners within a designated portion of the unincorporated county (the Urban Unincorporated Area) to use and pay for a solid waste collection service. The County Ordinance further authorized the Board of County Commissioners of St. Lucie County (the "Board") to enter into an exclusive service agreement to provide solid waste collection and recycling services in the Urban Unincorporated Area. Under the provisions of the County Ordinance, charges for the solid waste services would be collected from the property owners directly by the regulated contractor and liens could be imposed against delinquent property.
Subsequently, in an effort to coordinate recycling efforts, the City and the county entered into an interlocal agreement to participate in a joint recycling program. The interlocal agreement contemplated that the exclusive regulated contractor of the County would provide recycling services within the City's boundaries. In furtherance of the interlocal agreement, the City also adopted Ordinance 93-11 (the "City Ordinance"), which consented to inclusion in the County's recycling program and granted the County's regulated contractor the authority to impose liens upon property within its municipal boundaries for delinquent recycling charges.
After competitive bidding, the County entered into an exclusive service agreement *1000 with Kimmins, as the regulated contractor, to provide the collection services within the Urban Unincorporated Area. The service agreement required Kimmins to provide residential solid waste collection and recycling services and to collect the cost for these services directly from the property owners. Pursuant to the County Ordinance in the unincorporated area and the City Ordinance within the incorporated area of Fort Pierce, liens were authorized to be filed by Kimmins against those properties which were delinquent in paying for solid waste or recycling services.
The trial court determined the County had the authority to grant to Kimmins an exclusive franchise agreement for the collection of solid waste and to require the payment of the cost of the service from property owners, regardless of whether the service was actually used. It concluded the assessed fees were in the nature of a special assessment, and rejected the landowner's claim that Kimmins' imposition of liens on the property of those who failed to pay the special assessment was invalid due to the County's failure to create a municipal services benefit unit (MSBU), pursuant to section 125.01(1)(q), Florida Statutes (1997).[2]
On appeal, the County and City concede that if the service fees charged of the landowners *1001 constitute mandatory user fees, as opposed to special assessments, then Ordinance No. 93-16 would be invalid. State v. City of Port Orange, 650 So.2d 1, 3 (Fla.1994) (defining "user fees" as charged in exchange for a particular governmental service which uniquely benefits the party paying the fees, and being paid by choice in that the party paying has the option of not utilizing the service and thereby avoiding the charge). Because the landowners were required to pay for waste collection and disposal whether or not they used Kimmins' services, the assessments at issue here would have to be special assessments, as the trial court found, in order to be valid. See Contractors and Builders Ass'n of Pinellas County v. City of Dunedin, 329 So.2d 314, 319 n. 8 (Fla. 1976).
Thus, the only disputed issue is whether the County was authorized to impose a special assessment for waste collection affecting only a portion of the unincorporated area without first creating an MSBU. Section 125.01 allows a county to create municipal service taxing or benefit units (MSTUs or MSBUs) within the county's unincorporated areas to assess the full costs of municipal services provided to that unit. Sarasota County v. Town of Longboat Key, 353 So.2d 569, 570 (Fla. 2d DCA 1977). Alternatively, the entirety of a county's unincorporated area may be assessed the cost of each municipal service provided by the county. Id. at 570-71. The landowners concede the law allows the County to impose a special assessment for waste disposal on the entire unincorporated area without first creating an MSBU, see Heinlein v. Dade County, 254 So.2d 50 (Fla. 3d DCA 1971); however, they contend the County was required to create an MSBU in order to impose a special assessment on only a portion of the unincorporated area. We disagree.
The plain meaning of section 125.01 and application of pertinent case law support our conclusion the County was not required to establish an MSBU before imposing the special assessment at issue here. Most importantly, the legislature provides in section 125.01(1) that a county's power to carry on county government "includes, but is not restricted to ..." the various powers enumerated in that section, among them the power to establish an MSBU or MSTU. The powers enumerated in section 125.01(1) are not all inclusive, and a county's authority includes that which is "reasonably implied or incidental to carrying out is enumerated powers," limited only by general or special law. Santa Rosa County v. Gulf Power Co., 635 So.2d 96, 99 (Fla. 1st DCA 1994). Section 125.01(3)(b) provides for a liberal construction of section 125.01 "in order to effectively carry out the purpose of this section and to secure for the counties the broad exercise of home rule powers authorized by the State Constitution." These provisions empower St. Lucie County to act as it did in imposing a special assessment without first establishing an MSBU or MSTU. Further, section 125.01(1)(r) permits a county to "levy and collect ... special assessments" as distinct from the county's power to "[l]evy and collect taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit ...." § 125.01(1)(r), Fla. Stat. (1997). The plain meaning of this subsection when given the mandated liberal construction in favor of the County, provides authority for St. Lucie County's action of imposing a special assessment on a portion of the unincorporated area of the County without first creating an MSBU or MSTU.
The landowners' reliance on Madison County v. Foxx, 636 So.2d 39 (Fla. 1st DCA 1994), is misplaced because the issue addressed in Madison County concerned a county's failure to follow procedures contained in the 1987 version of section 125.01(1)(q) when the county established an MSBU. Id. at 51. Madison County did not concern the issue of whether other subsections of 125.01 could be interpreted as providing *1002 the authority for a county's imposition of special assessments.
AFFIRMED.
KLEIN and SHAHOOD, JJ., concur.
NOTES
[1] Kimmins Recycling Corp. is not a party to this appeal. The separate summary judgment entered in Kimmins' favor reserved jurisdiction to consider Kimmins' compulsory counterclaim. We dismissed the landowners' appeal of that summary judgment without prejudice.
[2] Section 125.01(1), Florida Statutes (1997) provides in pertinent part:

(1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power includes, but is not restricted to, the power to:
* * * *
(k)1. Provide and regulate waste and sewage collection and disposal, water and alternative water supplies, including, but not limited to, reclaimed water and water from aquifer storage and recovery and desalination systems, and conservation programs.
* * * *
(q) Establish, and subsequently merge or abolish those created hereunder, municipal service taxing or benefit units for any part or all of the unincorporated area of the county, within which may be provided ... garbage and trash collection and disposal; waste and sewage collection and disposal; ... and other essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within such unit only. Subject to the consent by ordinance of the governing body of the affected municipality given either annually or for a term of years, the boundaries of a municipal service taxing or benefit unit may include all or part of the boundaries of a municipality.... This paragraph authorizes all counties to levy additional taxes, within the limits fixed for municipal purposes, within such municipal service taxing units under the authority of the second sentence of s. 9(b), Art. VII of the State Constitution.
(r) Levy and collect taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit, and special assessments; borrow and expend money; and issue bonds, revenue certificates, and other obligations of indebtedness, which power shall be exercised in such manner, and subject to such limitations, as may be provided by general law. There shall be no referendum required for the levy by a county of ad valorem taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit.
* * * *
(3)(a) No enumeration of powers herein shall be deemed exclusive or restrictive, but shall be deemed to incorporate all implied powers necessary or incident to carrying out such powers enumerated, including, specifically, authority to employ personnel, expend funds, enter into contractual obligations, and purchase or lease and sell or exchange real or personal property.
(b) The provisions of this section shall be liberally construed in order to effectively carry out the purpose of this section and to secure for the counties the broad exercise of home rule powers authorized by the State Constitution.
§ 125.01, Fla. Stat. (1997) (emphasis supplied).
Section 125.01(5) addresses the creation of special districts and provides:
(5)(a) To an extent not inconsistent with general or special law, the governing body of a county shall have the power to establish, and subsequently merge or abolish those created hereunder, special districts to include both incorporated and unincorporated areas subject to the approval of the governing body of the incorporated area affected, within which may be provided municipal services and facilities from funds derived from service charges, special assessments, or taxes within such district only. Such ordinance may be subsequently amended by the same procedure as the original enactment.
(b) The governing body of such special district shall be composed of county commissioners and may include elected officials of the governing body of an incorporated area included in the boundaries of the special district, with the basis of apportionment being set forth in the ordinance creating the special district.
(c) It is declared to be the intent of the Legislature that this subsection is the authorization for the levy by a special district of any millage designated in the ordinance creating such a special district or amendment thereto and approved by vote of the electors under the authority of the first sentence of s. 9(b), Art. VII of the State Constitution. It is the further intent of the Legislature that a special district created under this subsection include both unincorporated and incorporated areas of a county and that such special district may not be used to provide services in the unincorporated area only.
§ 125.01(5), Fla. Stat. (1997).