790 So.2d 598 (2001)
WORKMAN ENTERPRISES, INC., Appellant,
v.
HERNANDO COUNTY, etc., et al., Appellee.
No. 5D00-2439.
District Court of Appeal of Florida, Fifth District.
August 3, 2001.
*599 Robert L. Rocke of Foley & Lardner, Tampa, for Appellant.
Robert Bruce Snow, Esquire of Robert Bruce Snow, P.A., Brooksville, for Appellee.
PALMER, J.
Workman Enterprises, Inc. (Workman) appeals the final judgment entered by the trial court upholding the special assessment levied by Hernando County (County) on its property. We affirm.
Counties are authorized pursuant to section 125.01(1)(q) of the Florida Statutes (1997) to levy special assessments against property. Madison County v. Foxx, 636 So.2d 39 (Fla. 1st DCA 1994). A special assessment is a "charge assessed against property of some particular locality because that property derives some special benefit for the expenditure of money." Atlantic Coast Line R. Co. v. City of Gainesville, 83 Fla. 275, 91 So. 118 (1922).
In Sarasota County v. Sarasota Church of Christ, Inc., 667 So.2d 180 (Fla.1995), our Supreme Court distinguished a special assessment from a tax:
Taxes are levied throughout a particular taxing unit for the general benefit of residents and property and are imposed under the theory that contributions must be made by the community at *600 large to support the various functions of the government. Consequently, many citizens may pay a tax to support a particular government function from which they receive no direct benefit. Conversely, special assessments must confer a specific benefit on the land burdened by the assessment and are imposed under the theory that the portion of the community that bears the cost of the assessment will receive a special benefit from the improvement or service for which the assessment is levied.
Id. at 182-183. The Court explained that "a valid special assessment must meet two requirements: (1) the property assessed must derive a special benefit from the service provided; and (2) the assessment must be fairly and reasonably apportioned according to the benefits received." Id. at 183 (citing City of Boca Raton v. State, 595 So.2d 25, 30 (Fla.1992)).
When a trial court is presented with a property owner's challenge to a special assessment the appropriate "standard of review is the same for both prongs; that is, the legislative determination as to the existence of special benefits and as to the apportionment of the costs of those benefits should be upheld unless the determination is arbitrary." Id. at 184. "The apportionment of assessments is a legislative function, so if the evidence as to benefits is conflicting, as is generally the case, and is predicated on the judgment of expert witnesses, the findings of the city officials will not be disturbed." City of Gainesville v. Seaboard Coastline Railroad Co., 411 So.2d 1339, 1340 (Fla. 1st DCA 1982). The property owner has the burden to rebut the presumption of correctness of special assessments and such presumption can be "overcome only by strong, direct, clear and positive proof." Id. The evidence presented at trial must be viewed in the light most favorable to the County. Rinker Materials Corp. v. Town of Lake Park, 494 So.2d 1123 (Fla. 1986).
In 1987, the County began to levy special assessments against properties in order to fund the cost of providing fire and rescue services to those properties. In order to levy the assessment against the properties, the County initially created a municipal services benefit unit (MSBU) called the Northwest District. Each property within the district was then assigned to one of four different categories, each category having a different assessment rate. From 1987 to 1998 the County created additional MBSU districts, and some districts were merged and renamed. In addition, property categories were added, and the definitions of what types of property belonged in each category were adjusted. Assessment rates were also modified each year to correspond with the changes in property categories and other factors related to the increased cost of providing fire and rescue services.
In 1991, the County created the South Central District in which Workman's property was located. In 1997, the South Central District was merged with another district to form the East Hernando District. In 1998, the County levied a special assessment for fire and rescue services against the five categories of properties in the East Hernando District including Workman's property. Workman challenged the assessment by filing suit in the circuit court contending that the assessment did not satisfy the fair and reasonable prong of the two-part test. (See Sarasota County v. Sarasota Church of Christ, Inc., 667 So.2d 180 (Fla.1995)). More specifically, Workman maintained that the 1998 apportionment was arbitrary, and thus the assessment was invalid, because it was formulated based upon the methodology used *601 in 1987 to determine the categories and assessment rates which, Workman alleged, was adopted by the County in 1987 without competent, substantial evidence. Workman did not challenge the special benefits prong.
Following a bench trial, the trial court rejected Workman's claim and entered judgment for the County concluding that the apportionment was not arbitrary, but rather was fair and reasonable, and thus the assessment was valid. Workman now challenges this ruling by again arguing that the assessment was invalid because it was not fairly and reasonably apportioned. We affirm the trial court's ruling because the instant record fails to support Workman's theory that the formulation of the 1987 methodology or its alleged use by the County in 1998 resulted in an unfair or unreasonable apportionment of the 1998 special assessment.[1]
At trial, Workman sought to establish that the 1998 apportionment was arbitrary based on its claim that the evidence presented to the County in 1987 was insufficient to support the formulation of the methodology, and thus, the 1998 assessment was invalid because it was derived by utilizing the 1987 methodology. To that end, Workman presented the testimony of two county fire chiefs, one of which was involved in the process of formulating the 1998 assessment on Workman's property. Workman's evidence established that neither fire chief knew precisely how the 1987 methodology or the 1987 rates were developed for the Northwest District as they were not involved in the assessment process at that time. No transcript was presented of the proceedings before the County in 1987; however, the minutes of those proceedings reflected that the County's corporate services manager made a presentation to the board that the assessments "fairly distributed the fees among the various types of property." The evidence further established that Workman's property was never located in the Northwest District, the 1987 assessment on the Northwest District had been repealed years earlier, and the 1987 assessment was not the subject of any challenge by Workman.
Focusing on the 1998 special assessment, Workman failed to present any evidence that the assessment was not fairly or reasonably apportioned among the property categories in the East Hernando District or that the burden imposed on its property exceeded the value of the benefit received. The fire chiefs described a lengthy and detailed apportionment process by which the categories and assessment rates were devised and revised based on the need for capital, equipment, and personnel, as well as the overall cost of delivering fire and rescue services to certain types of property. They testified that the property categories have varying rates based on the costs incurred in fighting fires for each type of property, and that each year the fire department justifies to the County the special benefits received by each category and the apportionment of cost for each category based on historical data. The fire chiefs further testified that the assessments were in line with the benefits received by each property category. In addition, the County presented uncontroverted expert testimony that the apportionment was not arbitrary and that the allocation of costs was consistent with the benefits received. The expert witness explained that in 1998 the fire chiefs determined the category rates by using a needs assessment and a budget for providing the fire and rescue services. He also opined that the categories were reasonably related *602 to the demands that those categories placed on the fire and rescue system, and that the assessment rates were proportional and equitable. This evidence was sufficient to support the trial court's ruling that the apportionment of the special assessment was not arbitrary.
In closing, we reject Workman's claim that the trial court erred by considering the testimony of the County's expert witness. Trial courts can properly consider evidence other than that originally presented to the County, including expert witness testimony, when the validity of a special assessment is challenged. See City of Winter Springs v. State, 776 So.2d 255 (Fla.2001).
AFFIRMED.
COBB and HARRIS, JJ., concur.
NOTES
[1] We reject without discussion Workman's other arguments.