851 So.2d 256 (2003)
Patrick DONNELLY and Leigh A. Donnelly, Appellants,
v.
MARION COUNTY, et al., Appellees.
No. 5D02-1851.
District Court of Appeal of Florida, Fifth District.
August 1, 2003.
*257 Richard Bennett and Lisa Bennett of Bennett & Bennett, Coral Gables, for Appellants.
Gordon B. Johnston, Marion County Attorney, Ocala, and Gregory T. Stewart, Harry F. Chiles and Virginia Saunders Delegal of Nabors, Giblin & Nickerson, P.A., Tallahassee, and Charles R. Forman of Forman, Hanratty & Montgomery, Ocala, for Appellees.
PLEUS, J.
This appeal concerns the legality of using special assessments to fund "enhanced law enforcement" and "community resource facilities" in an unincorporated area of Marion County.
Patrick Donnelly, individually and on behalf of others similarly situated, and Leigh Donnelly (the plaintiffs), appeal from an *258 adverse final judgment validating the Marion County Marion Oaks Municipal Service Taxing Unit (MSTU).
The plaintiffs, representing a class of some 14,000 landowners, sued Marion County and the MSTU seeking a declaration that a special assessment levied by the MSTU for the purpose of funding, in the words of the ordinance creating the taxing unit, "law enforcement" and "community resource facilities," was unconstitutional. The plaintiffs alleged that the services funded by the special assessment provided no special benefit and had no logical relationship to the class members' real property. The complaint also challenged apportionment of the assessments.
The plaintiffs and approximately 14,000 class members are owners of unimproved property within the Marion Oaks development in Marion County subject to annual levy of non ad valorem special assessments fixed by the MSTU. The actual class was certified by the trial court consisting of all owners of unimproved real estate located within the boundaries of the Marion Oaks MSTU who are listed on the current tax roll. The plaintiffs' lots are located on paved roads but contain no structures.[1] The MSTU and Marion County are governed by the Marion County Board of County Commissioners.
Marion County had previously created a municipal service taxing unit which provides law enforcement services in the unincorporated area of the county funded by a special ad valorem tax. That service is provided to properties in the Marion Oaks MSTU. Enhanced law enforcement (greater patrols, creation of a sheriff's substation in Marion Oaks) is provided pursuant to the instant MSTU funded by the special assessment.
The assessments fund 160 hours per month of sheriff services in Marion Oaks. The assessments have also been used to construct and operate a 450-seat auditorium and a building containing recreational areas and rent-free space for a public library, a sheriff's substation and a neighborhood watch office. The grounds contain sports courts (basketball, tennis, shuffleboard) and a children's playground.[2]
This MSTU was created after a referendum election in 1988 when the voting residents of Marion Oaks approved enhanced law enforcement services and a community resource facility within Marion Oaks to be funded by special assessments on properties within the development.
Ordinance 88-37, in creating the Marion Oaks MSTU, does so under section 125.01(1)(q), Florida Statutes, "for the purpose of providing law enforcement and the construction, maintenance, and operation of community resource facilities...." The ordinance authorized the collection of special assessments beginning in 1989 at the following rates (the assessments continue to be imposed at the same rates):[3]

Improved Property $25
Partially Improved Property $20
Commercial Improved $25
Commercial Tracts $10
Greenbelt $ 5

*259 The annual resolution of the Marion County Commission imposing the assessment contains no legislative finding of special benefit from 1990-96. Beginning in 1997, the annual resolution asserts that the services funded provide a special benefit to the properties assessed. No legislative finding of fair apportionment was included in any resolution until 2001.
The MSTU currently has six employees. The MSTU contracts annually with the Sheriff's Department to provide for patrols and investigative services at Marion Oaks for a total of 160 hours per month. The MSTU construction debt has been satisfied and the annual assessments now pay for operations and maintenance of the facilities and the sheriff's services and for reserves.
The plaintiffs moved for partial summary judgment claiming Ordinance 88-37 was unconstitutional under Florida law and that the assessments made pursuant to it were invalid as a matter of law. The defendants countered with their own motion for partial summary judgment.
The trial court denied the plaintiffs' motion and granted the defendants' motion, finding the ordinance to be valid, facially constitutional and constitutional as applied. The court declined to rule on the actual correctness of the assessments, finding that genuine issues of material fact existed which necessitated an evidentiary hearing.
At trial, the plaintiffs' expert, Dr. Nicholas, and the defendants' expert, Dr. Fishkind, testified on the issues of special benefit and fair apportionment of the special assessments. At the close of the plaintiffs' case, the court entered judgment for the defendants on the issue of special benefit. The court found that the assessments do not fund general government services but supplement such services. The court ruled that the special assessments provide a special benefit to the assessed properties by enhancing the value of the property and creating a community identity. At the close of the trial, the court ruled that the assessments were fairly and reasonably apportioned among the benefitted properties. A final judgment incorporating these rulings was entered.
In order for a special assessment to be valid and enforceable, it must be made pursuant to legislative authority and the method prescribed by the Legislature must be substantially followed. Madison County v. Foxx, 636 So.2d 39 (Fla. 1st DCA 1994). Further, a valid special assessment requires that the property assessed must derive a direct, special benefit from the service provided and that the assessment must be fairly and reasonably apportioned among properties that receive the special benefit. City of North Lauderdale v. SMM Props., Inc., 825 So.2d 343 (Fla.2002); Workman Enters., Inc. v. Hernando County, 790 So.2d 598 (Fla. 5th DCA 2001).
Counties are authorized by the Florida Constitution to levy ad valorem taxes on real property[4] and are authorized by general law to impose special assessments and user fees. Collier County v. State, 733 So.2d 1012 (Fla.1999). The county, in enacting Ordinance 88-37, acted pursuant to section 125.01(1)(q), Florida Statutes, which provides in relevant part that counties have the power to:
Establish, and subsequently merge or abolish those created hereunder, municipal service taxing or benefit units for any part or all of the unincorporated area of the county, within which may be provided fire protection; law enforcement; beach erosion control; recreation service and facilities; water, alternative *260 water supplies, including, but not limited to, reclaimed water and water from aquifer storage and recovery and desalination systems; streets; sidewalks; street lighting; garbage and trash collection and disposal; waste and sewage collection and disposal; drainage; transportation; indigent health care services; mental health care services; and other essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within such unit only. Subject to the consent by ordinance of the governing body of the affected municipality given either annually or for a term of years, the boundaries of a municipal service taxing or benefit unit [MSTU; MSBU] may include all or part of the boundaries of a municipality. In ad valorem taxes are levied to provide essential facilities and municipal services within the unit, the millage levied on any parcel of property for municipal purposes by all municipal service taxing units and the municipality may not exceed 10 mills. This paragraph authorizes all counties to levy additional taxes, within the limits fixed for municipal purposes, within such municipal service taxing units under the authority of the second sentence of s. 9(b), Art. VII of the State Constitution.
The concept underlying MSTUs and MSBUs developed in the late 1960s as a way of avoiding taxation of real property within municipalities to finance services rendered by the county purely for the benefit of unincorporated areas. See Sarasota County v. Town of Longboat Key, 353 So.2d 569 (Fla. 2d DCA 1978), quashed in part on other grounds, 375 So.2d 847 (Fla.1979). Section 125.01(1)(q), originally enacted in 1974, authorizes a county to provide "municipal services" and provides for a mechanism whereby only the recipient of the services pays for such services. By creation of municipal service taxing or benefit units within its unincorporated areas, the county can assess the full costs of the "municipal service" provided to that unit. Sarasota County, 353 So.2d at 570.
While the language in section 125.01(1)(q) contains an extensive list of municipal-type services and several funding alternatives, including "service charges, special assessment or taxes," this court has read this language as being descriptive and not necessarily "authorizing all listed services to be funded by all of the devices identified." Water Oak Mgmt. Corp. v. Lake County, 673 So.2d 135, 136 n. 3 (Fla. 5th DCA 1996), quashed in part, 695 So.2d 667 (Fla.1997). Nevertheless, case law has recognized that counties are authorized by section 125.01(1)(q) to levy special assessments to fund certain services provided through a MSTU or MSBU. See, e.g., Workman Enters., 790 So.2d at 598 (fire rescue services); Lake County, 673 So.2d at 136 (solid waste disposal and fire protection services).[5]
The plaintiffs assert that the MSTU here, as funded by special assessments, violates article VII, section 9(b) of the Florida Constitution, which governs local taxes and provides:
(b) Ad valorem taxes, exclusive of taxes levied for the payment of bonds and taxes levied for periods not longer than two years when authorized by vote of the electors who are the owners of freeholds therein not wholly exempt from taxation, shall not be levied in excess of the following millages upon the assessed *261 value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; for all school purposes, ten mills; for water management purposes for the northwest portion of the state lying west of the line between ranges two and three east, 0.05 mill; for water management purposes for the remaining portions of the state, 1.0 mill; and for all other special districts a millage authorized by law approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation. A county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes.
(Emphasis added). Plaintiffs contend that by funding municipal services by special assessment rather than ad valorem taxes, Marion County has avoided having to include these assessments within the 10 mill limit for municipal purposes, thus circumventing the constitutional provision. Absent a claim that the effect of the special assessment is to, in fact, exceed the 10 mill cap, we find it unnecessary to address this interesting but purely academic question.
The circuit court correctly observed, in entering partial summary judgment finding Ordinance 88-37 to be facially constitutional, that "counties have the authority to impose assessments pursuant to their home rule power in the Florida Constitution and also pursuant to the broad grant of power given to the counties in § 125.01, F.S." This is consistent with Sockol v. Kimmins Recycling Corp., 729 So.2d 998 (Fla. 4th DCA 1999), wherein the Fourth District explained that a broad interpretation of section 125.01(1) is mandated by Florida law:
The powers enumerated in section 125.01 are not all inclusive, and a county's authority includes that which is "reasonably implied or incidental to carrying out is [sic] enumerated powers," limited only by general or special law. Santa Rosa County v. Gulf Power Co., 635 So.2d 96, 99 (Fla. 1st DCA 1994). Section 125.01(3)(b) provides for a liberal construction of section 125.01 "in order to effectively carry out the purpose of this section and to secure for the counties the broad exercise of home rule powers authorized by the State Constitution."
729 So.2d at 1001.
Even given that the county had the authority under section 125.01 to enact Ordinance 88-37, the plaintiffs, relying on decisional law, in particular the supreme court decision in Lake County, assert that the trial court erred in failing to grant their motion for summary judgment or otherwise enter judgment in their behalf on the basis that use of a special assessment for the services at issue here was improper as a matter of law.
A special assessment is a "charge assessed against property of some particular locality because that property derives some special benefit for the expenditure of money." Workman Enters., 790 So.2d at 600 (quoting Atlantic Coast Line R.R. Co. v. City of Gainesville, 83 Fla. 275, 91 So. 118 (1922)). In Sarasota County v. Sarasota Church of Christ, Inc., 667 So.2d 180, 182-83 (Fla.1995), the supreme court distinguished a special assessment from a tax:
Taxes are levied throughout a particular taxing unit for the general benefit of residents and property and are imposed under the theory that contributions must be made by the community at large to support the various functions of the government. Consequently, many citizens may pay a tax to support a particular government function from which they receive no direct benefit. Conversely, special assessments must *262 confer a specific benefit on the land burdened by the assessment and are imposed under the theory that the portion of the community that bears the cost of the assessment will receive a special benefit from the improvement or service for which the assessment is levied.
As a broad proposition, special assessments may be used by counties to fund certain services and are not limited to purely capital improvements.[6]Madison County. Courts have validated special assessments to fund fire and rescue services, Workman Enterprises, waste and recycling services, Sockol, and solid waste disposal and fire protection services, Lake County. See also, Sarasota Church of Christ, Inc. (holding storm water services proper subject for special assessment); Harris v. Wilson, 693 So.2d 945 (Fla.1997) (holding solid waste operation valid subject of special assessment).
In Lake County, the supreme court was confronted with the use of special assessments to fund fire protection services through an MSTU in an unincorporated area of Lake County. The court explained that the limited inquiry in determining whether to validate a special assessment concerns whether the services at issue provide a "direct, special benefit" to the assessed property. 695 So.2d at 670. The court majority continued that in evaluating whether a special benefit is conferred to property by the services for which the assessment is imposed:
that the test is not whether the services confer a "unique" benefit or are different in type or degree from the benefit provided to the community as a whole; rather the test is whether there is a "logical relationship" between the services provided and the benefit to real property.
Id.
The majority explained that while fire protection services are generally available to the community as a whole, the greatest benefit of those services is to owners of real property who enjoy reduced fire insurance premiums and enhancement of the value of the property. In short, "there is a `logical relationship' between the services provided and the benefit to real property." Id.
In rejecting the dissent's warning that approval of such a special assessment would open the floodgates to such assessments, the court, in dictum, observed:
Clearly, services such as general law enforcement activities, the provision of courts, and indigent health care are, like fire protection services, functions required for an organized society. However, unlike fire protection services, those services provide no direct, special benefit to real property. Whisnant [v. Stringfellow, 50 So.2d 885 (Fla. 1951) ]. Thus, such services cannot be the subject of a special assessment because there is no logical relationship between the services provided and the benefit to real property.
695 So.2d at 670 (emphasis added).
This passage clearly indicates that not every municipal-type service provided by a county may be funded by way of special assessment. Indeed, recently in the City of North Lauderdale case, a unanimous court struck down a special assessment for emergency medical services, rejecting the City's assertion that the special assessment *263 confers a special benefit to real property because a logical relationship exists between the use and enjoyment of property and the emergency medical services. Justice Quince, writing for the court, explained that emergency medical services provide a personal benefit to individuals, and that while such services may afford a sense of security to individuals, neither the service nor the sense of security is provided to the property itself. Emergency medical services were distinguished from those typically associated with first response medical aid provided by firefighters as part of their normal duties. 825 So.2d at 346-47. The court declined to extend Lake County, rejecting the contention that a special assessment that provides a higher level of medical services is a natural and logical application of that decision. Id.
Rather, while acknowledging the deference to be accorded a legislative body's determination of special benefit, the court agreed with the Fourth District's conclusion that competent substantial evidence did not exist to support the City's findings of special benefit. Id. at 348. The court instead found that the special assessment had the indicia of a tax, explaining:
there is no logical relationship between emergency medical services (the assessment, treatment, and transport of sick or injured people) and a special benefit to real property. Emergency medical services provide a personal benefit to individuals. There is no indication from the City or in the record how emergency medical services enhance the value of the property against which the assessment is imposed. The better argument made by the City is that the provision of emergency medical services has a logical relationship to property because these services enhance the use and enjoyment of property. See Meyer v. City of Oakland Park, 219 So.2d 417 (Fla.1969). As to the "use and enjoyment" argument, however, it does not follow that one has potential added or actual use and enjoyment of property because emergency medical services are provided to owners of that property. Although emergency medical services may provide a sense of security to individuals, neither the service nor the sense of security is provided to the property itself.
Id. at 350.
City of North Lauderdale reaffirms Florida decisional law such as Crowder v. Phillips, 146 Fla. 440, 1 So.2d 629 (1941), which struck down use of special assessments to fund hospital services. In Crowder, the court explained:
It is clear that the tax to be imposed under the provisions of the law under attack is ad valorem on all real and personal property as distinguished from assessments for special benefits to the real property located in the district. That a hospital is a distinct advantage to the entire community because of its availability to any person who may be injured or stricken with disease cannot be gainsaid, but there is no logical relationship between the construction and maintenance of a hospital, important as it is, and the improvement of real estate situated in the district. The purpose is, of course, to provide a place where those who are so unfortunate as to be injured or to become diseased may receive the benefits of medical skill and modern apparatuses whether they be the owners of property or not, and such advantages cannot fall in the category of special benefits to real property for which assessments would be authorized.
1 So.2d at 631.
City of North Lauderdale, the dictum in Lake County, and the Collier County decision wherein the supreme court rejected the claim that an "interim governmental *264 service fee" for "growth sensitive services" including operation of the sheriff's office, could be funded by special assessment,[7] reflect the supreme court's recognition of limits on the use of special assessments to fund municipal-type services that, while providing a general benefit to individuals, do not confer a direct benefit upon the land burdened by the assessment. The plaintiffs assert that the services funded here by special assessment, law enforcement and recreation/community center facilities/services, are precisely those type of services.
The defendants seek to distinguish this decisional law by asserting that the law enforcement services here are "enhanced" rather than general law enforcement services provided to all county residents. The defendants assert that the county commission made a finding of special benefit in resolutions imposing the assessments in 1997 and thereafter[8] and that this legislative finding is entitled to deference, having not been shown to be arbitrary. See Sarasota Church of Christ, Inc., 667 So.2d at 180 (holding that legislative determination of special benefit will be upheld unless arbitrary; if reasonable people may differ as to whether land assessed was benefitted, determination will be sustained).
Merely because a special assessment is rationally related to an increased demand by residents for county services does not establish the existence of a special benefit. Collier County, 733 So.2d at 1017. Rather, the services funded must provide a direct, special benefit to the real property burdened. Id. (emphasis added).
"Enhanced" law enforcement services provide no more direct, special benefit to real property than basic law enforcement activities. The defendants' argument confuses the nature of the service with the level or degree of such service. It is the nature of law enforcement services which precludes funding by way of special assessment because such services, while undoubtedly beneficial to individuals, do not directly benefit the real property being burdened. See Crowder.
The defendants assert that City of North Lauderdale, the dictum in Lake County and Collier County, actually stand for the principle that improvements or services such as courthouses and general law enforcement, which provide a general government benefit county-wide, may not be funded by special assessment, but that where the specific improvement or service is provided within a discrete geographic area, a special assessment is appropriate to fund the improvement or service. In other words, the funds generated here are not going into the county's general fund but are used to provide a benefit within the Marion Oaks MSTU. Irrespective of the size of the geographic area being assessed, however, the test for the validity of a special assessment is not merely whether some benefit results from the assessment, but rather whether the improvement or *265 service provides a direct, special benefit to the real property burdened.
The defendants rely on Rushfeldt v. Metropolitan Dade County, 630 So.2d 643 (Fla. 3d DCA 1994), for validating the special assessment in this case. Rushfeldt validated, under the Dade County Home Rule Charter, an ordinance creating the Belle Meade Security Guard Special Taxing District, whereby special assessments were used to fund a security guard gate and security guard services within the district. The appellate court opinion adopted the trial court's summary final judgment which recites that communities in Dade County were electing to supplement police services with walled communities, neighborhood crime watch, off-duty police patrols and protected entrances, including guardhouses and gates. This finding indicates that the nature of the services in Rushfeldt, including capital improvements directly related to real property, differs significantly from the increased county sheriff patrols and recreation services funded in this case.[9]
Even assuming arguendo that summary judgment was properly denied to the plaintiffs because of the factual nature of the issue of special benefit, the evidence presented at trial failed to establish the requisite direct, special benefit. Unlike in Lake County, where it was established that fire protection services provide for lower homeowners insurance premiums and enhanced property values, the evidence of special benefit to the real property here consisted solely of expert testimony that enhanced law enforcement protection generally renders real property more valuable and more marketable.[10] However, so does the provision of general law enforcement services. Yet, as indicated in Lake County, such services may not form the proper basis for a special assessment. Any benefit here is not the type of direct, special benefit to real property required to validate a special assessment.
This conclusion is buttressed by City of Winter Springs v. State, 776 So.2d 255 (Fla.2001), which is actually relied upon by the defendants for the proposition that services which create a community identity and have a beneficial impact on the value of the real property may be funded by special assessment. The special assessment there actually funded improvements to subdivision entrances and boundaries which included new signs, landscaping and street lighting. Again, these capital-type improvements provided a direct, special benefit to the real property being assessed, and the fact that people outside the assessed area may have incidentally benefitted from the improvements was not fatal to the special assessment. Conversely, the services here, which inure to the benefit of all Marion County residents, provide at the very most, a vague, indirect benefit to the real property being assessed.
The defendants' contention that an increase in value to real property is, in and of itself, enough of a direct benefit to sustain a special assessment, would seem *266 to validate just about any such assessment. It is difficult to envision how the competent provision of any municipal-type service by a county would have any effect other than to enhance, to some degree, property values.
The trial court's final judgment indicates that special benefit to the land may include benefits which, while not immediately enjoyed, may be reaped in the future:
[I]n considering the existence of special benefits and the apportionment thereof, it is proper to consider not only the benefits derived by the existing use of the property but also those which may result from any reasonable future use of the property.
In this vein, the defendants point out that the extension of water and sewer lines to unimproved property with accompanying special assessments have been upheld despite the fact that the property may not be developed for some time. However, in those situations, the direct benefit to the real property in the form of the capital improvements is clearly quantifiable. That is not evident in the instant case where the defendants' own expert testified he was unable to say with any exactitude what the increase in the value of any particular lot in the MSTU was as a result of provision of the services at issue, even though he was confident that the lots "are more valuable and more marketable."
The county commission "cannot by its fiat make a local improvement to that which in its essence is not such an improvement, and it cannot by its fiat make a special benefit to sustain a special assessment where there is no special benefit." City of North Lauderdale, 825 So.2d at 348 (quoting South Trail Fire Control Dist. v. State, 273 So.2d 380, 383 (Fla.1973)). The trial court erred in failing to enter judgment for the plaintiffs on the basis that the special assessment for the services in this case was unauthorized as a matter of Florida law. Given our conclusion, we need not address whether competent, substantial evidence supports the trial court's finding that the assessment is properly apportioned.
We reverse the partial summary judgment and final judgment and invalidate Ordinance 88-37. In doing so, we express no opinion on the issue of any refund of assessments paid, an issue which has yet to be litigated. The plaintiffs are free to raise their claim upon remand and the defendants may interpose any applicable defenses, including statute of limitations and laches.
REVERSED AND REMANDED.
SHARP, W. and PALMER, JJ., concur.
NOTES
[1] Marion Oaks was developed by the Deltona Corp. which marketed the lots particularly to out-of-state buyers. As a result, some 12,000 class members reside out of state and are not qualified to vote in Marion County.
[2] These facilities are located within the Marion Oaks development on land donated by the Deltona Corp. Use of the facilities is not limited to residents of Marion Oaks. There are some fee-based activities at the facility for which other county residents pay higher fees than do residents of Marion Oaks.
[3] The plaintiffs' properties are assessed at the "partially improved property" rate.
[4] Art. VII, § 9(a), Fla. Const.
[5] Counties need not create an MSTU or MSBU in order to levy special assessments on a portion of unincorporated lands for municipal services. Sockol v. Kimmins Recycling Corp., 729 So.2d 998 (Fla. 4th DCA 1999). Counties have the power to levy special assessments pursuant to section 125.01(5)(a) (special districts) and section 125.01(1)(r).
[6] Historically, special assessments were imposed to fund capital improvements such as water and sewer lines, Meyer v. City of Oakland Park, 219 So.2d 417 (Fla.1969) and street improvements, Bodner v. City of Coral Gables, 245 So.2d 250 (Fla.1971). More recently, special assessments have been used to fund certain services.
[7] Collier County involved an effort by the county to augment "growth sensitive governmental services" including the sheriff's office, libraries and parks and recreation which already received funding from ad valorem tax revenues. The county's argument that the "interim governmental service fee" was a valid special assessment was rejected with the court finding that the fee had the indicia of a tax and that the services provide no direct special benefit to the real property being assessed.
[8] WHEREAS, the Board finds that the property within the MSTU will derive a special benefit from the expenditure of money collected pursuant to this resolution and the ordinance.
[9] The defendants rely on Williams v. Escambia County, 725 So.2d 392 (Fla. 1st DCA 1999). Williams is a two-paragraph decision which cites to no authority in holding that special assessments by the county on leasehold interests for mosquito control and police protection was lawful. Williams seems to be a unique case involving funding of local government services to Santa Rosa Island, an island owned by the county and leased by long term leases. Because the land was owned by the county, it escaped ad valorem taxation. In any event, the decision does not contain sufficient facts to permit it to serve as precedent for the special assessments here.
[10] Even the defendants' expert could not find any relationship between lower insurance rates and the services being provided.